WILLIAM O. BUTLER v. THE IRON CLIFFS COMPANY.

*Specific performance—Parol evidence—Contract by correspondence.*

1. Where a contract is made by correspondence, the intent of the parties must be gathered from the whole thereof; citing *Francis. v. Barry*, 69 Mich. 313.

2. Where, in a suit to enforce the specific performance of a contract for the sale of mineral lands, it appears that the contract was made by conversations between the parties, in which it was understood that the stone on the lands valuable for building purposes was to be reserved, and by after-correspondence in which said reservation was referred to, the correspondence must be interpreted in the light of the conversations, evidence of which is admissible; citing *Loud v. Campbell*, 26 Mich. 239; *Richards v. Fuller*, 37 Id. 161; *Phelps v. Whitaker*, Id. 72; *Bailey v. Cornell*, 66 Id. 107.

Appeal from Marquette. (Stone, J.) Argued April 5 and 6, 1893. Decided June 16, 1893.

Bill for specific performance of land contract. Both parties appeal. Decree reversed, and bill dismissed. The facts are stated in the opinion.

*Ball & Hanscom,* for complainant, contended:

1. A written contract of bargain and sale was fully completed between the parties, as alleged in the bill.

2. When an agreement has been reduced to writing, everything before resting in parol becomes thereby extinguished or discharged; citing *Parkhurst v. Van Cortlandt*, 1 Johns. Ch. 273; and conversations controlling or changing the stipulations of the parties are, in the absence of fraud, no more received in a court of equity than in a court of law; citing *Willard v. Tayloe*, 8 Wall. 573; 2 Story, Eq. Jur. § 1531.

*Sherman, Hoyt & Dustin* and *Hayden & Young,* for defendant.

LONG, J. It is alleged in the bill of complaint:

1. That the defendant was the owner of certain lands situate in Marquette county, and, being disposed to sell the same, addressed a written communication to complainant, September 19, 1891, containing a proposition to, sell the same, specifying the price per acre.

2. That the complainant, on October 17 following, accepted such proposition by writing, and on October 19 he received a telegram from the president of defendant, company, saying: "Will send deed to-morrow."

3. That the aggregate purchase price specified in the proposition was $28,200, which was paid to defendant.

Complainant therefore charges in the bill that by these means a contract of sale was made and concluded between the parties for the lands.

The answer admits the letter of September 19, the answer thereto, and telegram, but avers—

1. That this letter was but one of a series of letters passing between Mr. Butler and Mr. Mather, president of the defendant company, on the subject in question; that the letters themselves had been preceded by three conversations between the parties relating to the same subject; that the purpose of the letter of September 19 was only to fix a price, the fact that any deed, if given, would contain certain reservations, being fully understood between the parties; that all the letters and conversations must be taken together to ascertain the meaning of the transaction; that complainant, Butler, well knew this fact, and construed the letter of September 19 accordingly.

2. That it was expressly understood, both in these prior conversations and letters between Mr. Butler and Mr. Mather, that any deed, given by the defendant, of the lands in question must contain reservations saving and reserving to defendant forever all metals, ores, and minerals, and all slate, sandstone, limestone, granite, marble, and other rock or stone valuable for building purposes, with the right to dig, mine, and quarry the same, etc., and to use so much of the land for that purpose as was necessary, and also a reservation of a right of way for railroads across the premises; and that the letter of September 19, counted upon by the bill as a proposition of sale, was written by Mr. Mather with this distinct understanding.

3. That, in the conversation referred to in one of the letters, Mr. Mather carefully and fully explained to Mr.

Butler the nature of the reservations which would be
included in any deed made by the company as above set
forth, and that these reservations were the usual reserva-
tions contained in deeds given by the Iron Cliffs Company
in the form used by it; that Butler expressly stated in
such conversation that he understood that any conveyance
made by the company would contain these reservations,
and all of them, and he further stated that he would pur-
chase the lands subject to such reservations; that the let-
ter of September 19 was itself a reply to a letter written
by Butler, dated September 3, regarding the same subject,
and containing a request for an offer of the lands in ques-
tion at some price for which the defendant company would
be willing to sell the lands, and in which last-mentioned
letter, also, the factor of price was the only one discussed;
that this letter of September 3 written by Mr. Butler was
of itself a reply to a letter written by Mather, of August
31, in which reference was again made by Mr. Mather to
reservations, and that no exceptions were taken by Butler,
in any of the correspondence previous to the payment of
the money and the tender of the deed, to the reservations
proposed by Mr. Mather, and mentioned in the letter of
August 31; that, before Butler delivered his certified check
for the purchase price, he was shown the form of deed
which he would receive, which form was the usual form
used by the Iron Cliffs Company, and contained all the
reservations mentioned, and, after having examined this
form of deed, Butler thereupon handed to the messenger
the check for the purchase price.

4. The answer positively denies the making of any such
contract as that alleged in the bill and the power
of Mather to make the same, and denies the making, or
the power to make, any other contract for sale than one
containing the reservations mentioned.

The proofs were taken in open court, and a decree entered
finding that the contract between the parties did not reserve
the rock and stone or the railroad right of way, and direct-
ing that the defendant execute and deliver to complainant
a deed containing the usual covenants of warranty, con-
veying to complainant the lands mentioned, excepting and
reserving to the defendant forever all metals, ores, and
minerals in or upon said lands, together with the continu-

ous right to enter upon said lands and explore for, mine, smelt, and refine all such ores and minerals, and to remove and dispose of the same.    Complainant was awarded costs. From this decree both parties appeal.

The court below, while admitting the oral testimony on the hearing, refused to consider it in determining what the contract between the parties was.    From the testimony of Mr. Mather, president of the defendant company, it appears that some time in August, 1891, complainant called upon him at his office in Cleveland, and wanted to buy these lands, and was advised that the company did not care to sell them; that Butler called again the next day, and renewed the conversation, when he was advised by Mather that he was not prepared to take the matter up, but would consult with his people about it; that soon after, and during the same month, he met the complainant at Marquette, when he again asked if the defendant would sell the lands, and wanted to know if the company would consider a proposition of $10 per acre, and was advised that, on returning home, Mr. Mather would consult his people, and write him. During some of these conversations Mr. Mather advised complainant that all the company's deeds of these lands contained mineral reservations, and that, if a deed was executed, "it would contain our usual mineral reservations, which included all stone."

Mr. Mather further testified that the form of their deeds for many years had contained the reservations contained in the deed to complainant, except rights of way to railroads, and that he told complainant that this was the usual form of their deeds, and that, in addition to this form, the company had recently decided also to insert a reservation giving defendant the privilege to grant rights of way to railroads, and that complainant then said he understood that; that he then advised complainant he had better look at the form of the deeds and examine it.

Mr. Mather further testified that he never had any authority from the company to make a deed of the lands. except upon the form contained in the deed in question. This deed contains this reservation:

" Saving and reserving, however, unto the said party of the first part, and to its successors and assigns, forever,. all metals, ores, and minerals, and all slate, sandstone, limestone, granite, marble, and other stone or rock valuable for building or other purposes on or beneath the surface of said lands, or any part or portion thereof, together with the right to enter upon said lands, and to explore therefor, and to mine, smelt, and refine such ores and minerals, and to quarry and dress such stone or rock, and to remove the same, and for that purpose to erect or construct. or maintain all such buildings, machinery, roads, or railroads, sink such shafts, remove such soil, occupy as much of said land, and use and direct such streams or ponds of water thereon, as may be necessary or adequate to the successful prosecution of such business."

It appears that a subsequent clause in reference to the use of the lands for railroad purposes and the right of way over the lands for such purposes was contemplated to be inserted in those deeds, but was not in the form of deeds in use at that time. This latter reservation is not important, however, in this controversy, as it is agreed that that clause is not now insisted upon.

Complainant denied that in these conversations with Mr. Mather anything was said about some of these reservations in the deed. He states that—

" Nothing was said about the stone that I remember of. I don't think the word ' stone' ever passed between us. Mr. Mather's statement of the whole proceeding was correct, except as to that one thing in regard to stone and railroads."

He was asked what his understanding was in reference to the written proposition of Mr. Mather, and, if he accepted it, what reservations there were of the stone, and. answered:

"My understanding of it was,—in fact, I had really two interpretations in my mind; I thought perhaps Mr. Mather had decided to sell me the land without any reservations, or I thought he proposed to sell the land with the mineral reservation, just as we had talked before. I thought it might be either way. I was willing to accept it upon the basis of the proposition."

It appears that complainant wrote Mr. Mather on September 3, 1891, asking prices of certain lands which he described. This was answered by Mr. Mather on the 19th, giving him prices on certain sections, as follows:

"In reference to our lands in Marquette county, our people are not willing to give an option on them to you, but they will place the following prices at which they are willing to sell them for cash. We will not change these prices during the next 30 days, and during that time will give you the first chance at them. We will sell our lands in sec. 32 at $10 an acre, in sec. 33 at $100 an acre, town 49, range 25; in sec. 10 at $40 an acre, in sec. 15 at $50 an acre, town 48, range 25.

"Yours truly,
"IRON CLIFFS COMPANY.
"By WM. G. MATHER,
"President."

This was answered on October 5 by complainant, and in which he expressed surprise at the prices, but asked that he might have time to secure other lands to combine with them to bring the average price lower. On the 17th he again wrote Mather, accepting the proposition of September 19, stating:

"I will take all the lands described in that letter, and at the prices named therein. Please make warranty deed or deeds conveying said lands to William O. Butler, Marquette, Mich., and forward same to J. M. Wilkinson's Bank, this city, together with draft on me for the amount of purchase price," etc.

He also wired acceptance of the proposition, to which Mr. Mather wired back: "Telegram received; will send deed to-morrow."

Prior to any of these written communications, and
after the talk between the parties in reference to these
lands, in compliance with Mr. Butler's request, Mr. Mather
wrote him under date of August 31, 1891, that, after
talking with his people, he found them quite indifferent
to selling, especially at the price talked. In this letter
Mr. Mather stated:

"You understand, of course, that in all our sales we
always reserve the usual mineral rights."

It appears that after the telegram and letter of acceptance
from Mr. Butler of the terms offered, and on October 20,
Mr. Mather forwarded the deed of conveyance for collec-
tion, at the same time writing Mr. Butler that he had
done so. In this letter he advised Mr. Butler about the
reservations contained in the deed, as follows:

"The reservations contained in the deed are as I told
you they would be,—the reservation of all stone and minerals,
and the right to explore and mine; also the reservation of
the right to grant rights of way to railroads."

A copy of the deed was sent Mr. Gibbs, agent of the
defendant company, to show Mr. Butler. He met Mr.
Butler, showed him the form of the deed, and Butler said
that it was a little different from what he had talked with
Mr. Mather, but he would write Mr. Mather about it. He
then made out his check for the amount of the purchase,
$28,200, and gave it to Mr. Gibbs for the company, and
taking the deed. It appears that Mr. Butler then wrote
Mr. Mather, claiming that the reservations in the deed as
to the stone should be stricken out, and a new deed given,
not including the reservations of the stone and right of
way for railroads. The defendant company agreed upon
striking out the reservation in reference to the right of
way for railroad purposes, but refused to strike out the
ones in reference to the stone, claiming and insisting that
these reservations had been agreed upon.

We think the court below was in error in refusing to consider the oral testimony in the case. The contract, if any was made in reference to the sale of the lands, was made up of these conversations, and the letters and telegrams passing between the parties. It is evident that Mr. Mather, in these several conversations, meant to convey the idea to complainant that the company, if it made a sale, would reserve all minerals that it had been usual to reserve in its deeds. He called especial attention to the form of deeds which the company used, and advised complainant it would be well for him to look into these forms and examine them. Mr. Butler does not deny that this conversation was had, but says nothing was said about the reservation of stone. When examining the copy of the deed handed him by Mr. Gibbs, he saw that there was a reservation in reference to stone, and yet gave his check, certified by the bank, for the whole amount of the purchase. From these conversations, and the letters and telegrams passing between the parties, and the conduct of Mr. Butler in receiving the deed and paying for the lands before the alterations were made which he claims, it appears to us that the only construction which can be given to the contract is that the stone was a part of the intended reservation, and so understood by the parties to the transaction, and that the form of the deed given met all the requirements of the contract, except what is conceded in reference to the railroad right of way. The letter of August 31 apprised the complainant that there would be a reservation of the usual mineral rights. This had been explained by Mr. Mather in the conversations at Cleveland and Marquette, and he had called the attention of complainant to the form of deeds used. These deeds had always contained these reservations, and Mather advised complainant to examine their form.

It has been repeatedly held by this Court that, where

the contract is made by correspondence, the intent of the parties must be gathered from the whole of the correspondence. *Francis v. Barry,* 69 Mich. 313. The letters alone in this case did not contain the whole understanding of the parties, which must be interpreted with the aid of the oral testimony. The letter of August 31 is a part of the correspondence, and the expression of the "usual mineral rights," which were to be reserved, could only be explained by what had gone before in the oral conversations in reference to the form of deeds used. These rules have long been settled in this State. *Loud v. Campbell,* 26 Mich. 239; *Richards v. Fuller,* 37 Id. 161; *Phelps v. Whitaker,* Id. 72; *Bailey v. Cornell,* 66 Id. 107. This rule is stated by Jones on the Construction of Commercial and Trade Contracts (section 134) as follows:

"The test of the completeness of the writing proposed as a contract is the writing itself. If this bears evidence of careful preparation, of a deliberate regard for the many questions which would naturally arise out of the subject-matter of the contract, and if it is reasonable to conclude from it that the parties have therein expressed their final intentions in regard to the matters within the scope of the writing, then it will be deemed a complete and unalterable exposition of such intentions. If, on the other hand, the writing shows its informality on its face, there will be no presumption that it contains all the terms of the contract. In every case, therefore, the writing must be critically examined in the light of its surrounding circumstances, with a view of determining whether it is a memorial of the transaction."

In this view of the case we need not discuss the question of the power of Mr. Mather to make a deed other than in the usual form used by the company of which he was president. It is admitted that he had power to make the usual form of deed, and it was so made. We are satisfied that, taking the whole transaction as shown by the oral testimony and the letters, it was clearly understood what the reservations were to be, and that they are properly set

·out in the deed tendered by the defendant company. The bill is filed for specific performance of contract, and, it appearing that the deed tendered meets what the parties had agreed upon, the bill should be dismissed, with costs.

The decree of the court below must be reversed, and a decree entered here in accordance with these views.

The other Justices concurred.