PENN STEEL CASTING AND MACHINE COMPANY *vs.* WILMINGTON MALLEABLE IRON COMPANY.

*Assumpsit—Construction of Written Contract—Recoupment.*

1. When the words "quality and workmanship to be up to the standard" are employed in a written contract, it is fair to presume that there was in the trade a standard of quality and workmanship, and that the words were used in the same sense as understood in the trade. Evidence will not be admitted to show what the parties to the contract meant by said words, at least not before it is shown that there is no standard of quality and workmanship in the particular article recognized in the trade or business.

2. Parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument.

3. Where one person sells an article to another for a particular use, there is an implied agreement that the article shall be fit for that purpose. So that even if there be no standard ascertained, if goods are furnished for a particular purpose, and are reasonably suitable therefor, plaintiffs would be entitled to recover. But if not up to the standard, or not reasonably fit for the uses for which they were sold, they could not recover unless defendants received and made some use of the goods. If plaintiffs after goods are delivered have notice that they are not fit for the purpose for which they were furnished, and they are tendered or sent back to them, and they refuse

to receive them, or are notified that they are held subject to their order, defendants would not be liable on account simply of having kept the goods.

4. Recoupment is recognized in this State, and is favored in law to prevent circuity of action and multiplicity of suits. It is where one party to a contract is permitted to set up as a defense any damage he may have received by reason of the failure of the other party to comply with his contract in all matters involved in the contract.

(*June 14, 1898.*)

LORE, C. J., and SPRUANCE and GRUBB, J. J., sitting.

*William S. Hilles* for plaintiff.

*Benjamin Nields and John P. Nields* for defendant.

Superior Court, New Castle County, May Term, 1898.

ACTION OF ASSUMSIT (No. 59, September Term, 1896), on the common counts, to recover for goods sold and delivered. Plaintiff's claim was for 186 steel knuckles at three and three-quarter cents per pound, amounting to $348.20 with interest thereon from July first, 1895. After some correspondence and one or more meetings between their agents, on December 14, 1894, the defendant wrote the plaintiff as follows : "We accept your price for 1000 steel knuckles at 3¾ cents per pound f. o. b. Wilmington, Del., formal order to follow."

On December 19, 1894, the defendant sent the following order to the plaintiff, which was received by the latter on the same day : "Order No. A. 80. Wilmington, Del., Penn Steel Casting and Machine Co., Chester, Pa. Please furnish us with the following articles : 5000 Steel Knuckles No. 2. To be delivered as required during 1895. Price 3¾ cents per lb.—delivered here. Quality and workmanship to be up to standard and all knuckles that are broken, that are defective or poor metal to be replaced by you free of charge to us. We reserve the right to cancel this order at any time."

On December 20th, 1894, the order was accepted by the plaintiff as follows : " We are in receipt of your favor of the 19th inst., covering order A. 80 for 5000 steel knuckles, which we

have entered for our best attention. Thanking you for the order, we remain,'' etc.

James Bailey, treasurer of the defendant Company, after stating that a circular defining the word '' standard '' was shown him by one Ryan, the agent of the plaintiff, a week or two before the contract was made, was asked by counsel for defendant the following question :

''Q.   Was that paper before you or not, when you conversed with Ryan relative to the contract that you were about to make with the Penn Steel Casting and Machine Company, and re-duced to writing ; and was your contract, or not, made with reference to the statements in that paper with reference to the standard ? ''

(Objected to by counsel for the plaintiff, on the ground that where there is no allegation of fraud in a contract which is re-duced to writing, in order that a precedent document of any character may be incorporated into that contract or made a part of the same in any way, it must have been referred to in the written contract itself.   That the meaning of the word standard could not be shown by proving what was the understanding of either the plaintiff or the defendant as to that word, but only the meaning as known to the trade).

SPRUANCE, J :—As announced yesterday, the contract be-tween these parties is evidenced by the defendant's order of December, 19th and the plaintiff's acceptance of the same of December 20th.

The order required ''Quality and workmanship to be up to standard.''   The purpose of the question is to show that the paper, shown to the witness, contains a description of the standard referred to in the defendant's order.

The written contract makes no reference to any other paper, and no other can be incorporated into or made a part of it in the mode proposed.

As the case now stands it is to be presumed that the standard mentioned in the defendant's order was a standard of quality and workmanship known to the trade.

If it shall hereafter appear that the parties agreed in writing that the paper now produced should be a part of the contract, it will be admitted ; or if it shall hereafter be proved that there was in fact no standard of quality and workmanship known to the trade, the Court will consider the· question whether the contract should on that account be allowed to fail.

A majority of the Court are of the opinion that the question now propounded to the witness is not admissible, and it is so ruled.

GRUBB, J :—I concur with Judge Spruance in the view he has taken.

My understanding is that the question objected to has been asked for the purpose of virtually incorporating in the written contract this proposed paper which is not referred to in any way in that written contract.   If it is offered to make this virtually a part of the written contract which we are to construe in con- nection with this paper, and which the jury are to consider as so construed, then I do not feel that this question is admissible for that purpose.   Therefore I am opposed to admitting the question for that purpose.

In *1 Greenleaf on Evidence, Section 275*, the author says : '' Parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument.''   And in Section 278 of the same volume, the learned author lays down this general principle :   '' The terms of every written instrument are to be understood in their plain, ordinary and popular sense, unless they have generally, in respect to the subject matter, as by the known usage of trade or the like, acquired a peculiar sense, distinct from the popular sense of the same words ; or unless the context evidently points out that, in the particular instance, and in order to effectuate the immediate intention of the parties, it should be understood in some other and peculiar sense.''   In another place he also states that, in regard to words which have two meanings, the one common and universal, and the other technical and familiarly known in a particular science or trade, parol evidence is always admissible to show that the

PENN S. C. & M. CO. vs. WIL. M. I. CO.     341

OPINION OF COURT.

words were used in the latter sense, and to ascertain their technical meaning in such science or trade.

My view as to this matter now before us is that in the phrase "quality and workmanship to be up to standard," the words, "up to standard" in the written contract, mean a standard in the general sense as understood among those who deal in, and are familiar with the quality and workmanship of this sort of article. If that is the plain import of the word "standard," then I do not think that the counsel for the defense, in this instance, can be allowed to show that it has some other and particular meaning as contemporaneously understood by the parties outside of their written agreement or contract. The paper now objected to has not been mentioned or referred to in the written agreement (nor has any peculiar or special meaning of standard), for the agreement speaks generally only of a standard. A standard *ex vi termini*, implies a measure or test which has the general concurrence and recognition of the class of persons engaged in the particular business or trade under consideration.

Considering how long established and widely known has been the particular business involved in the case before us, it is not unreasonable for us to presume, until the contrary is shown, that some well known standard was, at the time of making this contract, generally recognized in said business or trade. Therefore, as this Court is called upon, in the first instance, now to construe said contract, we must give it the construction that the word standard therein imports, *prima facie*, a general standard as commonly recognized in the business in question, and not some other standard privately understood by the parties, or specially employed in the business of the Wilmington Malleable Iron Company, the defendant, or in the business of the Penn Steel Casting and Machine Company, the plaintiff. If it be true that such is the natural import of the language as actually written in this contract, then this Court ought to say so, because it is our duty to say so at this stage of the case when the Court is asked to determine, not what shall be the effect of the proposed testimony if we do admit it, but whether it shall be admitted to the jury at all and have any effect in the case. But, inasmuch as

the written contract does not define or describe the precise nature or character of this implied general standard, said construction of this contract will not preclude either the defendant or the plaintiff from showing by evidence, *aliunde*, its exact nature and character. Nor will it preclude the defendant from rebutting it by showing, by the like evidence, if he can (but which has not been shown), that there is no general standard of quality or workmanship of this particular article recognized among those engaged in the business. If he had shown that, then he might the better contend that standard in said contract had a special meaning, but no such generally used or recognized technical meaning, given it, and that therefore he should be entitled (but I do not say so) to prove it under the alleged rule of evidence that where the parties in a written contract use a particular word, having other than such technical meaning, they may show the peculiar meaning which they agreed *aliunde* it should have, and that when they used that word in making the contract, they used it in contemplation of that particular meaning.

But, however that may be, clearly, you cannot show, in the judgment of a majority of this Court, that standard, in this instance, has such a peculiar meaning before you show (as has not yet been done) that it has not the general meaning in said trade, which we have stated the word itself imports.

I think I have said all, probably, that is necessary to make the point clear to the counsel engaged on both sides, and to state my position on the question now being adjudicated by the Court. So far as the purpose, as I understand it, of asking the question is concerned, I do not think the question can be admitted and an answer given before this jury at the present stage of this proceeding.

LORE, C. J., (dissenting) :—Perhaps in the last resolve there will be no difference among the Court as to the application of the rule of evidence. If it was manifest that there was a general standard or a particular standard especially recognized as applicable to this particular class of moulding, I should at once concur with the majority of the Court. But the language of this order is, "Quality and workmanship to be up to standard." What

standard? Are they to assume that there is a general standard? Is not that assuming the very question at issue? Then we will have to go outside of that to find what is meant by it, either a special or a general standard, a standard applicable to this particular species of business, or a standard agreed upon by these parties. How are we to ascertain that? By assuming in the first instance, that there is a general standard and then refuse to permit the defendant to show a specific standard.

It occurs to me that the burden is upon the plaintiff to show that there is a general standard, a standard applicable to this particular work, or we cannot now exclude what this defendant desires to ask, to show that this standard is a standard agreed upon by the parties, and I think they are entitled to show that. If the plaintiff's counsel shows that there is a general standard governing the iron or steel trade or a particular standard governing this particular kind of manufacture of iron or steel, then of necessity the burden is the other way. But in my judgment the burden is upon the plaintiff first before we can exclude this testimony.

Upon that ground, I think it is admissible as leading up to that point.

(Exception noted for defendant).

The same witness then testified that there was a distinct understanding between himself and Ryan, representing the plaintiff, that the word standard employed in the contract meant a particular quality of steel knuckles. The witness was then asked "What was the understanding between you and the plaintiff, with reference to the meaning of the word standard as employed in the contract, and what representations, if any, were made to you by the plaintiff, and how were they made in respect thereto?"

(Objected to by counsel for plaintiff on the same ground as before stated, viz., that the parties to the contract could not be allowed to say that the word "standard" in the contract had any peculiar meaning, for instance as shown in the circular referred to ; second, that the word "standard" as used in the

contract needed no explanation, it being a word easily under-
stood, the same as the word " good " or " best."

*Crickett vs. Green, 3 Delaware Chancery, 466; Tatman vs.
Barrett, 3 Houst., 226; Truax vs. P. W. & B. R. R. Company,
3 Houst., 233; 1 Greenleaf on Evidence, Sec. 283; Taylor on Evi-
dence, Vol. 2, Part 1, Sec. 1148; Boydell vs. Drummond, 11 East,
142; Smith vs. Prujean, 6 Veasey, 560 ; 2 Phillips on Evidence,
\* 743; Dale vs. Smith, 1 Del. Chancery, 1.*

Defendant's counsel in reply cited *Brown on Parol Evidence,
pp. 12, 16 and 179.*

SPRUANCE, J :—A majority of the Court rule that question
out. (LORE, C. J., dissenting.)

LORE, C. J., charging the jury :

Gentlemen of the jury :—This is an action of assumpsit on
the common counts to recover for goods sold and delivered. The
plaintiff's claim is for 186 knuckles at 3¾ cents per pound,
amounting, as they claim, to $348.20 with interest thereon from
July first, 1895.

If you believe from the evidence adduced before you, that
knuckles have been furnished by the plaintiffs to the defendants
which were to be " of quality and workmanship up to standard,"
and if you believe from the evidence in this case that there is
controlling this class of business a generally accepted standard
and mode of ascertaining by that standard the workmanship and
quality of the material to be used in these knuckles, or a standard
fixed by the agreement and proved, and that the knuckles
furnished were up to the standard in workmanship and quality,
then the plaintiffs would be entitled to recover. But if you
should be unable to ascertain any specific standard or any specific
tests from the evidence sufficient to satisfy yourselves, then there
is a general rule or principle of law governing all contracts such
as this which should govern you, and that is, that where one
person sells an article to another for a particular use, there is an
implied agreement that the article so sold shall be fit for that
purpose. So that even if there should be no standard ascertained
by which the quality and workmanship may be tested in this

PENN S. C. & M. CO. vs. WIL. M. I. CO.    345

CHARGE OF COURT.

case, if the plaintiffs have furnished knuckles to the defendants for a particular use and those knuckles were reasonably suitable and fit for the purpose for which they were sold, in that case also the plaintiffs would be entitled to recover.    But if they were not up to the standard, if any standard has been proved, or if they were not reasonably fit for the uses for which they were sold, the plaintiffs would not be entitled to recover, unless the defendants received the knuckles, made some use of them and thereby became liable ; because if one receives goods and retains them, without objection, and uses them, he waives objection as to quality and the law holds him bound to pay for them.    But if after having delivered the goods, the plaintiffs had notice that they were not fit for the purpose for which they were furnished and they were tendered back to them or sent back to them and they refused to receive them, or were notified that they were held subject to their order, then the defendants would not be liable on account simply of having kept the goods.

The defendants claim in this case that they are not liable, on two grounds :

First, they claim that the goods were not up to standard, and were worthless for the purpose for which they were purchased. If they were not up to the standard, or not fit for the purposes for which they were sold as shown by proper tests, then the plaintiffs could not recover.

Second, the defendants claim, that they should not be compelled to pay for these goods, because of damage from plaintiffs' failure to comply with their contract which they set up under a claim of recoupment.    Recoupment is recognized in this State in the case of *Draper vs. Randolph, 4 Harr., 456*, in this language :    ''That if the plaintiff had proved a special contract as laid, and a part execution of it, not strictly within its terms, as by the delivery of ore of inferior quality ; if such ore had been accepted by the defendants, the plaintiff would be entitled to recover for such part performance, subject to a deduction of the damages which defendants sustained by the non-performance of the contract strictly and entirely.    This is what we understand by recouping damages in an action of assumpsit.''

Recoupment is favored in law to prevent circuity of action and multiplicity of. suits, and is where one party to a contract is permitted to set up as a defense any damage he may have received by reason of the failure of the other party to comply with his contract in all matters involved in the contract.

So that if you believe that these knuckles were furnished and yet that they were not of the quality and workmanship agreed upon and that by reason thereof the defendants suffered damages and that such damages amounted to as much as the claim, in this case the plaintiffs would not be entitled to recover on that ground. They could recover only so much of their claim as is in excess of such damages. If the defendants have succeeded in showing either of these defenses to your satisfaction from the evidence, they are entitled to a verdict.

This case is essentially a question of fact for you to decide. The law governing the case is plain and well settled, and there has been practically no dispute between the counsel as to the law. You are to determine from the evidence and from the facts proved whether your verdict shall be for the plaintiffs or, for the defendants.

Verdict for the plaintiffs for $409.48