FOREMAN'S SYSTEMS, INCORPORATED, a corporation organized and existing under the laws of the State of Delaware,

*vs.*

MILK DEALERS' CRATE CORPORATION, a corporation organized and existing under the laws of the State of Delaware, and AMOS L. FOREMAN.

*New Castle, March* 14, 1923.

Where a contract is sought to be made in the form of an offer and an acceptance, there is no meeting of minds unless the acceptance is of the identical thing offered.

If acceptance be not co-extensive with the offer, then before the offerer can be said to become bound he must have indicated in turn his assent to the modified acceptance.

It is not the uniform practice to embody provisions as to future improvements in an assignment of a patent or application and an omission of such provisions in the assignment is of no interpretative value in ascertaining the intent of the parties in the making of a prior agreement touching the assignment of patents and improvements thereon.

A resolution of a corporation accepting an offer to sell "the certain letters patent and patent applications as set forth in the letter herewith attached" *held* a sufficient acceptance of that part of the offer agreeing to assign future improvements as well, the offer being made in the letter attached.

Parol evidence that it was not intended that future improvements should pass under an assignment of patents *held* inadmissible, the offer of the patents and acceptance thereof being in writing and unambiguous. If such evidence is admitted, it should be disregarded.

If ambiguity in a contract is such as to leave a doubt as to which of two interpretations should be accepted, either of which may be reasonably given to the language used, parol evidence of intent may be received, but such evidence is not admissible where the language is plain and unambiguous.

A patent for a bottle crate *held* an improvement of another patent assigned, which passed with the assignment of the old patent and improvements.

Where inventor assigns patent and agrees to assign future improvements on the patent, the assignee is entitled to relief by way of specific performance, where the inventor subsequently makes improvements and has them patented.

BILL FOR SPECIFIC PERFORMANCE. On January 15, 1915, one Amos L. Foreman addressed the following proposal to the stockholders of Foreman's Systems, Incorporated, the complainant in this suit:

"To the Stockholders of Foreman's Systems, Inc., a Corporation of the State of Delaware——

Gentlemen: I, the undersigned, being the holder of letters Patent and Patent Applications of the United States as follows:

"United States Patent No. 915,581 dated March 16th, 1909, for improvements in bottle carrying crates,

"United States Patent No. 1,050,823 dated Jan. 21st, 1913, for improvements in bottle carrying crates,

"Application for patent, serial No. 547,034 for improvements in bottle washing, rinsing and sterilizing machine.

"do hereby agree to sell, assign, transfer and set over to this Company all my right, title and interest, in, to, by, from and under certain Letters Patent and Patent Application above mentioned, with the further agreement to assign all my right, title and interest to patents or patent applications covering any and all subsequent improvements made by me and under my control for and in consideration of the issue to me, my heirs, executors or assigns of the full-paid non-assessable common capital stock of this company to the amount of One Hundred Thousand Dollars, being understood by me that the acceptance of this proposition by you is dependent upon the amendment of the charter of the Company, authorizing an increase of its present capital stock, to an aggregate amount of Two Hundred Thousand Dollars.

"Upon the acceptance of this proposition and your delivery to me to [of] the stock above indicated, I will make, execute and deliver under your direction all proper instruments of writing to carry into effect, fully and completely the terms of the above stated proposition.

"[Signed]    Amos L. Foreman.    [Seal.]

"Witnesses:

"J. Irwin Doan.
"C. A. Wallford."

On the same day the stockholders, in meeting duly assembled, responded to the foregoing offer by adopting the following resolution, as appears from the minutes of the meeting:

"A motion was duly made by Mr. Doan and seconded by Mr. Crossgrove that the proposition offered the stockholders of this company by Mr. Foreman to sell out-right to the company the certain letters patent and patent applications as set forth in the letter herewith attached be accepted and carried out, by the proper offers of this company, and that upon the amendment of the charter pay over to Mr. Foreman $100,000.00 in common stock for these patents and patent applications. This motion was unanimously carried."

Thereafter on March 1, 1916, Foreman duly assigned to the complainant not only the two patents referred to in his letter of January 25, 1915, to-wit, the patents for improvements in bottle carrying crates, numbered respectively 915,581 and 1,050,823, and another patent No. 1,151,538 for improvements in bottle washing, rinsing and sterilizing machines (application for this patent being the serial No. 547,034 mentioned in said letter of January 25, 1915), but also in addition an application for patent for certain improvements in bottle washing, rinsing and sterilizing machines, U. S. Serial No. 29,802, for which patent No. 1,256,-482 was subsequently issued. On the same day the complainant issued to Foreman its common capital stock of the par value of one hundred thousand dollars, being one-half of the total authorized capital of the complainant, it having amended its certificate of incorporation by increasing its total authorized capital stock to $200,000.

On May 10, 1917, Foreman assigned to the complainant all his right, title and interest in and to four other inventions for improvements in bottle crates and in and to any letters patent of the United States which might be given therefor, for which said inventions he had made four several applications. The numbers of the same are not material, and so are omitted.

The record discloses that one of these applications was divided and a new application with a new serial number filed by Foreman on October 7, 1918, and a patent thereon issued to him on January 7, 1919, which patent was duly assigned by Foreman to the complainant on February 21, 1919; and two other patents based on applications so assigned on May 10, 1917, were issued

direct to the complainant as assignee. As to whether any further patents were issued upon the remaining applications referred to in the May, 1917, assignment, the record is silent.

At the time of all the assignments of patents and applications for patents above described, Foreman was not only a substantial stockholder of the complainant, but he was as well its president and a director. In March, 1918, he pledged seven hundred shares of his stock as collateral to a loan and later the same was lost to him. Just when he lost control of his stock, does not appear. He continued, however, to act as president of the corporation until December, 1919, and as director until December, 1920. Since then he has had no official connection with the complainant.

On March 30, 1920, while he was still a director of the complainant corporation, Foreman filed an application for a United States patent for "certain improvements in bottle crates," serial No. 369,841, which application was in July following, assigned by him to the defendant, Milk Dealers' Crate Corporation. On February 8, 1921, United States patent No. 1,368,221 was duly issued on said application to Milk Dealers' Crate Corporation. This is the patent involved in the pending suit. The bill charges and the answer admits, that Milk Dealers' Crate Corporation has been manufacturing bottle carrying crates containing improvements covered by said patent, and has granted licenses to others so to do.

Milk Dealers' Crate Corporation was organized in 1920 at the instance of Foreman. In consideration of the issuance to him of five thousand shares of its common stock and twenty-five hundred shares of its founders' stock of no par value, he assigned to it two applications for patents, one of them being the one on which the patent in suit was issued. Foreman since the organization of the defendant corporation has been a member of its board of directors and its president. It is stipulated between the parties that whatever knowledge Foreman had of the contract entered into between himself and the complainant on January 25, 1915, the defendant, Milk Dealers' Crate Corporation, also had at the time of the assignment to it of the patent in suit.

The bill prays that the complainant may be decreed to be the true equitable owner of said Letters Patent of the United States,

No. 1,368,221, and of the invention and improvements to bottle carrying crates therein mentioned and described; that the Milk Dealers' Crate Corporation be ordered by the decree of the court to assign the same to the complainant; and to account to the complainant for all profits and royalties received by it under said patent and to pay to the complainant the amount found to be due under such an accounting.

The cause was heard on bill, answer, written interrogatories and replies thereto, and oral testimony adduced before the Chancellor.

*Herbert H. Ward,* of the firm of Ward, Gray & Neary, for the complainant.

*John R. Nicholson,* for the defendants.

THE CHANCELLOR. The complainant's case is, that the patent in controversy constitutes an improvement upon the two patents assigned to it by Foreman on March 1, 1916, and that, by the terms of the contract between it and Foreman, entered into on January 25, 1915, such improvement is in equity its property.

The stipulation of the parties, entered into through their solicitors, removes from the case any question of countervailing equity in the defendant, Milk Dealers' Crate Corporation, as an innocent purchaser for value without notice.

As the case is presented, there are two main questions to be passed upon. They are, first, did the contract between Foreman and the complainant obligate Foreman to assign all improvements he might subsequently make in bottle carrying crates; and if so, second, is the patent in controversy such an improvement?

First. The contract is evidenced by writing. It consists of an offer by Foreman and an acceptance by the complainant. While the parties agree as to the extent of Foreman's offer, they are in disagreement as to the extent of the complainant's acceptance. It is, of course, elementary that where a contract is sought to be made in the form of an offer and an acceptance, there is no meeting of minds unless the acceptance is of the identical thing offered. If the acceptance be not co-extensive with the offer, then before the offerer can be said to have become bound, he must have indicated in turn his assent to the modified acceptance.

There is no controversy between the parties over these elementary principles. Their difference of view turns upon whether, or not, the resolution of the complainant corporation, adopted in response to Foreman's proposal, did as a matter of law accept the offer exactly as made.

The defendants contend that it did not. In making this contention, they take the view that Foreman's offer embraced two distinct things, viz.: (a) Two patents and one application for patent, then in existence, and (b) an agreement to assign all interest in any future improvements which he might subsequently make; and that the resolution of acceptance went only as to (a). This being so, they contend, that (b) was rejected and the acceptance was, therefore, of a modified offer.

This is an ingenious construction of the language employed by the parties, and was very earnestly urged by the solicitor for the defendants both at the argument and upon his brief. I find myself, however, wholly unable to accept it. Answering the views advanced in its support, I should first observe that the omission of the assignment of March 1, 1916, to include a clause covering future improvements is of no particular significance in the process of ascertaining the intent of the parties. The offer as made took care of future improvements and the insertion of a corresponding clause in the assignment which followed the offer and its acceptance could be of further value only as spreading notice to the world that the assignee was henceforth entitled to all improvements which Foreman might make. If the assignee chose to take its chance of being able to fasten notice of its rights upon future purchasers from Foreman of subsequent improvements invented by him, without the aid of an express clause in the assignment conveying the patents, it was competent for it to do so. But, considering the large and substantial interest which Foreman then had in the complainant corporation and his official connection with it, it would appear, viewing the transaction as of the date of the assignment, that the complainant had no cause to apprehend difficulties in the future because of any improvements which third parties may have obtained from Foreman. To the suggestion of the solicitor for the defendants that the omission from the assignment of a clause conveying future im-

provements is not in accordance with the regular and established method in patent conveyancing where such improvements are in contemplation, and, therefore, indicates an intent on the part of Foreman and the complainant that the provision for future improvements was designedly omitted by them from the terms of their bargain, it is sufficient to say that a reading of the reported cases involving patents will disclose that it is not the uniform practice to embody such a provision in the assignment itself. However, unwise it may be, such provision is, nevertheless, sometimes contained in a separate instrument. See *Birkery Mfg. Co. v. Jones*, 71 *Conn.* 113, 40 *Atl.* 917; *Lion Tractor Co. v. Bull Tractor Co.*, 131 *Fed.* 156, 145 *C. C. A.* 344.

I return now to a consideration of the language of the motion accepting Foreman's offer. That it was the intention of the complainant to accept and carry out some sort of proposition from Foreman is, of course, clear. Something is agreed to be accepted and carried out, for the resolution so says. What is it? Looking for the subject of the sentence of which "be accepted and carried out" is the predicate, we find it to be the noun "proposition." Standing alone this subject would carry no definite meaning. Its phrase and clause modifiers, however, strip from it its vague generality and draw it down to a certain definite meaning. It is first a proposition offered by Foreman. But that leaves it with a general meaning, still vague, but less so than before. It is further a proposition "to sell out-right certain letters patent and patent applications." Not only so, but it is also a proposition to sell "as set forth in the letter herewith attached." The proposition is now to be learned of in all its details by reference to Foreman's letter which was attached. The fallacy of the argument by which the defendants are misled is in regarding the phrase "as set forth in the letter herewith attached" as modifying "letters patent and patent applications," rather than as modifying "proposition." Not only does the grammatical construction of the sentence forbid this, but it is to be observed that if it was so meant, it would be a rather awkward use of language to describe a memorandum reference to patents in a document as therein "set forth." The better and probable expression would have been something like "enumerated" or "listed." Further-

more, it will be noted that the reference is to "patents and patent applications." The letter did refer to "patents," but unless applications for improvements mentioned in the letter were contemplated by the acceptance, then the word "applications" in the resolution should have been in the singular. In other words, the letter named only one existing application for patent, and if the clause "as set forth in the letter herewith attached" was meant not to modify "proposition," but to identify the "certain letters patent and patent applications," as only those named in the letter as then in existence, it was a misdescription, for the letter mentioned no "applications" (plural) as in existence.

If the construction I thus place on the resolution is correct, then I gather from the course of the argument that the patent in dispute would be conceded by the defendants to belong in equity to the complainant, if it be further found to be an improvement such as the proposition in Foreman's letter contemplated. Whether it be such improvement will be considered later. That the construction I have thus placed upon the resolution of acceptance is correct, not only am I fully satisfied of from its language, but I am reinforced in this view by the circumstances surrounding the transaction and the conduct of the parties with respect to the subject-matter. The complainant was about to sell one-half of its total authorized common stock, in par value one hundred thousand dollars worth, for two patents for improvements in bottle carrying crates and one application for patent for improvements in bottle washing, rinsing and sterilizing machines. To what extent and how long would the patents thus purchased for so large a share of its capital stock have proved a source of profit to the complainant if Foreman, whose inventive genius seems to have been attracted in this particular direction, were left free to devise improvements which if developed by others, might shortly destroy all the value of the thing which his assignee had purchased? In *Aspinwall Mfg. Co. v. Gill*, (*C. C.*) 32 *Fed.* 700, Mr. Justice Bradley said:

"But where a man purchases a particular machine secured by a patent, and open to an indefinite line of improvements, it is often of great consequence to him that he should have the benefit of any future improvements that may be made to it. Without that, the whole value of the thing may be taken

away from him the next day. A better machine might be made by the inventor, and sold to another party, which would make the machine acquired by the first purchaser entirely useless. These things happen every day. And hence it has become the practice, in many cases, to stipulate for all future improvements that may be made by the same inventor upon any particular machine which he induces a party to purchase from him, sometimes by way of license to use such improvements, and sometimes by way of purchase and ownership thereof."

It is reasonable to assume that the complainant was quite aware of the jeopardy in which the value of the purchased patents would be placed, if they were not safeguarded against the possibility of subsequent competition on the part of future improvements in the hands of others. And, accordingly, it was probable that the purchaser in this case intended, as it had every natural motive to desire, that the future improvements made by its vendor should belong to it.

Foreman proposed to sell his present invention and all future improvements for one hundred thousand dollars in stock. This offer did not allocate to the then existing patents on the one hand and to future improvements on the other, respective values in terms of stock. It was an offer to sell all for an entire sum. He so stated in the first paragraph of his proposition, and at the end thereof he said:

"Upon the acceptance of this proposition and your delivery to me to [of] the stock above indicated, I will make, execute and deliver under your direction all proper instruments of writing to carry into effect, fully and completely, the terms of the above stated proposition."

The stock stipulated for was issued to him. He received the entire consideration to be paid for all that he offered. This, even if there were doubt concerning the meaning of the contract, is a strong circumstance corroborative of the construction I have placed upon it. Certainly the patents were not worth as much without the stipulation for future improvements as they were with such stipulation. Yet, if the contentions of the defendant are accepted we are to conclude that the complainant was as willing to pay one hundred thousand dollars of its capital stock in the one case as in the other.

Not only so, but when Foreman executed the first assignment in obedience to his engagement under the contract, he as-

signed not alone the patents covering the three things mentioned in his letter of proposal, but also an additional thing, to-wit, an application for a patent on an improvement on washing, rinsing, and sterilizing machines, not mentioned in the letter and filed by him at a date subsequent thereto. And on at least two later occasions, as the statement of the case shows, he assigned to the complainant further improvements of a kind which fit into the description of future improvements mentioned in his letter of proposal. Why were these assignments made, unless it was in recognition of his obligations under the contract in question? The defendants undertake to ascribe to him another motive for his action in this regard by saying that his stock holdings in the complainant were of such magnitude as to make it to his personal interest to turn over to it these later fruits of his inventive faculties. Perhaps it may have been so. It is more rational, however, to ascribe his actions to a sense of the obligation he was under. So far as appears, his personal interests as a large stockholder of the complainant could have been subserved as well by a license as an assignment. Making an assignment was an act quite beyond what his interest as a stockholder required for its promotion. It can comport only with a sense of obligation under his agreement, unless indeed it be credited to a disposition to free-handed charity, which, in the presence of the agreement, is not to be presumed.

The circumstances attending the making of the contract and the conduct of the parties subsequent thereto have the effect, I repeat, of confirming me in the view I take as to the meaning of the contract, which the parties entered into.

At the hearing the defendants offered to prove by parol evidence that the contract as worded was not intended to convey the meaning which I have attributed to it. The offer was rejected on objection. The substance of the rejected testimony would, if received, have been as follows: That the attorney for the complainant advised the stockholders at their meeting that the offer as made by Foreman could not be accepted as made, because as a matter of law stock of a Delaware corporation may not be issued for something to be done or performed in the future, and that, therefore, in order for the proposed issuance of stock to be

valid, only that part of his offer could be accepted which related to the patents and applications then in existence; and so the stockholders, being thus advised, meant the language of the resolution to embrace only the existing patents and application, and not the future improvements.

Upon further consideration, I am confirmed in my original view that the rejection of the offered evidence was correct in principle. It was not admissible. Nor can the same evidence, which is in the record in the form of an answer to an interrogatory, be accorded any consideration, for if the written contract is such as not to admit of parol evidence explanatory of its language, then the court must look only to its phraseology for the meaning, and ignore all parol evidence which would tend to vary, explain or alter it. *Saulsbury v. American Vulcanized Fibre Co.*, 5 *Boyce*, 182, 194, 91 *Atl.* 536, 541. The court in that case said:

"Parol evidence to change the effect of an ambiguous [sic] resolution passed by an authorized board of a corporation is inadmissible, or, if admitted, is without effect." ("Ambiguous" is evidently a misprint. "Unambiguous" is intended.)

When a written contract is unambiguous, the law conclusively presumes that its language correctly expresses the intent of the parties, in the absence of fraud or mistake, and will listen to no parol suggestions to the contrary. *Saulsbury, et al., v. American Vulcanized Fibre Co.*, 5 *Boyce*, 182, 91 *Atl.* 536; *on writ of error*, 5 *Boyce*, 510, 95 *Atl.* 1078; *Griffin v. Star Printing Co.*, 1 *Boyce*, 169, 74 *Atl.* 1072; *Penn Steel Casting Co. v. Wilmington Malleable Iron Co.*, 1 *Pennewill*, 337, 41 *Atl.* 236; *Tatman v. Barrett*, 3 *Houst.* 226. This is the so-called parol evidence rule, and it is as deeply rooted in the law as any long established and rationally founded rule can be. There are, of course, many exceptions which courts recognize as properly to be made to the strict application of its letter. The character of such exceptions need not be dwelt upon here. The reported cases and the text-books are full of their illustration. It is difficult, if not impossible, to condense into one statement a general principle to which they may all be referred for their support. In the main, however, they may be said to arise where there is some ambiguity in the written document, or some necessity of identifying subject-matter or parties, or some reference therein to outside matters, or some such equivocation

as is known as a latent ambiguity, or a peculiar meaning given by usuage, custom or technical knowledge to the words employed, all of which call for evidence aliunde the document for their explanation. In the following cases rulings were made, or discussions indulged in, which exemplify the nature and character of evidence which may be considered proper to be received by way of exception to the general rule. *Doylestown Agricultural Co. v. Ewing*, 2 *Boyce*, 421, 79 *Atl.* 212; *Crockett v. Green*, 3 *Del. Ch.* 466; *Dale v. Smith, et al.*, 1 *Del. Ch.* 1, 12 *Am. Dec.* 64: *Gray, et al., v. Harper, et al.*, 1 *Story*, 574, 10 *Fed. Cas. No.* 5716; *Keller v. Webb, et al.*, 125 *Mass.* 88, 28 *Am. Rep.* 209; *Proctor, et al., v. Hartigan*, 139 *Mass.* 554, 2 *N. E.* 99; *Wolff v. Wells Fargo & Co.*, 115 *Fed.* 32, 52 *C. C. A.* 626; *N. Y. Wrecking Co. v. O'Rourke*, 92 *App. Div.* 217; 86 *N. Y. Supp.* 1116; *LaChicotte v. Richmond Ry. Elec. Co.* 15 *App. Div.* 380, 44 *N. Y. Supp.* 75; *Cassidy v. Fonthan, (Com. Pl.)* 14 *N. Y. Supp.* 153; *Gould v. Magnolia Metal Co.*, 207 *Ill.* 172, 69 *N. E.* 896; *Butler v. Iron Cliffs Co.*, 96 *Mich.* 70, 55 *N. W.* 670.

If the ambiguity is such as to leave a doubt as to which of two nterpretations should be accepted, either of which may be reasonably given to the language used, then it is doubtless true that parol evidence of intent may be received. *Western Union Tel. Co. v. American Bell Tel. Co., (C. C.)* 105 *Fed.* 684. But where the language is plain and unambiguous, as I conclude it to be here, no authority would admit parol evidence tending to restrain its clear and unambiguous import. *Saulsbury v. American Vulcanized Fibre Co., supra; Penn Steel Casting Co. v. Wilmington Malleable Iron Co., supra.* To do so would be calculated only to muddy the stream—to raise a doubt where none had theretofore existed.

The learned solicitor for the defendant would not, I am sure, controvert the foregoing statement of general principles. The premise from which his argument proceeds must necessarily be that the contract in question is ambiguous. Though he does not say so, insisting as he does that it is perfectly clear, yet such must be his premise, for otherwise, certainly, the parol evidence would not be admissible.

I am convinced that the language of the motion, or resolution, of January 15, 1915, is so clear and unambiguous as not to need the outside aid of parol testimony to explain.

The second question to be passed upon is whether the patent in suit is in fact an improvement upon the patents for bottle carrying crates mentioned in the agreement. The defendants contend that it is not.

What is an improvement upon a patent? In *Littlefield v. Perry*, 21 *Wall.* 205, 226 (22 *L. Ed.* 577) Chief Justice Waite said:

"They produce a stove doing the same thing which the first was intended to do, but doing it better. This is the proper office of an improvement."

In *Aspinwall Mfg. Co. v. Gill, et al., (C. C.)* 32 *Fed.* 697, where the controversy was over an alleged improvement upon a patented potato planter, Mr. Justice Bradley said:

"But the complainant meets this defense by denying that the machine covered by the present patents is an improvement upon the old machine covered by the patent of 1869; on the contrary, the complainant contends that it is altogether à new machine, working on a different principle. It cannot be denied, however, that both are potato planters; that both are erected on a two-wheeled vehicle, which is drawn along by a tongue, like a cart; that both have a hopper into which the potatoes are deposited preparatory to planting; that both have a passage-way, called a 'concave,' for the potatoes to pass into, where they are taken up by the machinery, one at a time; that the device for taking them up is a series of spears attached to a disk which is caused to revolve by the movement of the wheels of the cart; and that these spears are carried, as the disk revolves, successively, to the potatoes lying in the passageway or concave, and each spear impales a potato, and carries it up and around to a tripping device, which throws the potato off of the spear, and into a conductor that carries it to the ground. The new machine is better than the old one, no doubt; the spears are differently arranged, so as to secure a potato more certainly every time; and other improvements are adopted; but to say that it is not an improvement on the old machine is to abandon the dictates of common sense for the transcendental distinctions of ingenious theory. The principal ground for denying the new machine to be an improvement of the old, is the difference in the arrangement of the spears; the old spear being bent like a hook, so as to strike the potato tangentially, and the new one being straight, nearly in line with the radius of the disk to which it is fastened. This is a difference in form, but not in principle. The object in both cases is to spear the potato. By the old method, you strike it with the hooked spear; by the new you hold the potato while the spear enters it. The last is much the better device, no doubt, but in both you spear the potato. The last plan of doing it is an improvement on the old plan; that is all. The patent office and patent experts may make two classes, if they please, and call one a hooked-spear class, and the other a radial-spear class; but that cannot settle the matter. These classifications are en-

tirely arbitrary, and may descend to infinitesimal differences. The broad common sense of the thing is the only true criterion of the rights of the parties, and of the legal rules by which they are to be decided."

Again in *Westinghouse Airbrake Co. v. Chicago Brake and Mfg. Co.,* (*C. C.*) 85 *Fed.* 786, at page 790, Judge Grosscup used this language:

"But, were they much more dissimilar, such fact would not change my conclusion. Identity of purpose and function of the two mechanisms controls the question whether the one stands in the relation of an improvement to the other. Dissimilarity of the mechanical means employed to reach the purpose, or perform such function, only measures the merit and character of the improvement. Park may, in his later invention, in the narrow sense of particular arrangement and adjustment of valves, have started out on new lines; but, in the broader idea that dominates these air-brake devices, he remained, in 1895, precisely where he was in 1888. In the later patents he only perfects, in mechanical details, the fundamental conception upon which his former invention was built. The two groups of inventions, in my judgment, stand indisputably, in the relation of consecutive mechanical growth,— in the relation of an imperfect machine, somewhat perfected. In every view of the meaning to be given to the word 'improvements' as used in the assignment, I can find nothing that fairly excludes these later inventions."

Testing the patent in controversy by the principles indicated in the foregoing excerpts, it would appear clear that it constitutes an improvement such as is contemplated by the agreement. The patent itself is described in the letters patent as a "certain improvement in bottle crates." That it is an improvement upon the patents for bottle carrying crates formerly owned by Foreman, and by him assigned to the complainant, is clearly shown by the testimony. A crate manufactured by the complainant under its patents, and a crate manufactured by the defendant corporation under the disputed patent were placed in evidence as exhibits. Upon an examination of them, their contruction and general features, I am of the opinion that the only difference between them is in the details of design of the essential parts by which the later one is better adapted to the purpose and function common to them both, and by which the later one may also be perhaps more economically manufactured.

There is no occasion for lengthening this opinion by a description of the mechanical construction of each crate. The

chief difference between the two is in the character of the bottom upon which the bottles rest. In the earlier one, this bottom consists of two wires stretched longitudinally in the crate; in the later one, it consists of a plate of steel metal in which are formed pockets for receiving the bottles. In both, the bottom supports the bottle, possesses a certain resiliency, and permits of convenient washing and cleansing of the bottles when in the crate. In the later crate, these features are possessed to an improved degree, because the nature of the bottom in combination with certain other minor features, supports and maintains the bottle more firmly in position and supplies, perhaps, a little more resiliency, thereby reducing the risk of breakage. Taking "the broad common sense of the thing," which, as said by Mr. Justice Bradley in the *Aspinwall Case, supra.* "is the only true. criterion of the rights of the parties, and of the legal rules by which they are to be decided," I am of the opinion that the invention in question is fairly within the meaning of the term improvement as used in the language of the agreement of January 15, 1915. Judge Grosscup, in the *Westinghouse Case, supra*, viewed the two groups of inventions then before him as standing indisputably "in the relation of consecutive mechanical growth,—in the relation of an imperfect machine, somewhat perfected." And I so view the inventions now before me.

Where a contract to assign future improvements to a patent is entered into under circumstances similar to those involved in this case, and where a subsequent alleged improvement is found as a fact to be an improvement within the contemplation of the contract, the complainant is entitled to relief by way of specific performance. *Aspinwall Mfg. Co. v. Gill*, 32 *Fed.* 697, 700; *Westinghouse Air Brake Co. v. Chicago Brake & Mfg. Co.*, 85 *Fed.* 786, 791; *Lion Tractor Co. v. Bull Tractor Co.*, 231 *Fed.* 156, 145 *C. C. A.* 344; *McFarland v. Stanton Mfg. Co.* 53 *N. J. Eq.* 649, 33 *Atl.* 962, 51 *Am. St. Rep.* 647; *Birkery Mfg. Co. v. Jones*, 71 *Conn.* 113, 40 *Atl.* 917.

A decree will accordingly be entered as prayed for. If the parties desire to be heard upon the principles of the accounting, an opportunity to do so will be afforded them.