### LION TRACTOR CO. v. BULL TRACTOR CO.

(Circuit Court of Appeals, Eighth Circuit. February 12, 1916.)

No. 4481.

1. EQUITY ⊜⊃94—PARTIES—RULE OF FEDERAL COURTS—"INDISPENSABLE PARTY."

It is the established rule in the federal courts that a suit in equity may proceed without the presence of all proper, or even necessary, parties, and that only "indispensable parties" must be joined, who have such an interest in the subject-matter of the controversy that a final decree cannot be rendered in the suit without injuriously affecting their interests, or without leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 246, 252; Dec. Dig. ⊜⊃94.

For other definitions, see Words and Phrases, First and Second Series, Indispensable Party.]

2. EQUITY ⊜⊃94—PARTIES—NECESSARY AND INDISPENSABLE PARTIES.

Persons who have disposed of all their interest in the subject-matter of a suit in equity, and who cannot be affected by the decree, are neither indispensable nor necessary parties.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 246, 252; Dec. Dig. ⊜⊃94.]

3. PATENTS ⊜⊃195—ASSIGNMENTS—CONTRACT TO ASSIGN—PATENTS FOR IMPROVEMENTS.

A patentee, who has sold and assigned his patent for a valuable consideration, a part of which is his employment by the purchaser for the

⊜⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

purpose of making improvements on the invention, may bind himself to assign any patents for such improvements to his employer.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 272-274; Dec. Dig. ⊜⟶195.]

4. INJUNCTION ⊜⟶161—PRELIMINARY INJUNCTION—DISCRETION OF COURT.

The granting or dissolution of an interlocutory injunction rests in the sound judicial discretion of the court of original jurisdiction, and its action may not be reversed by an appellate court without clear proof that it abused its discretion.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 347; Dec. Dig. ⊜⟶161.]

Appeal from the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

Suit in equity by the Bull Tractor Company against the Lion Tractor Company. From an order granting a preliminary injunction, defendant appeals. Affirmed.

This is an appeal from an order of the District Court for the District of Minnesota, granting a preliminary injunction enjoining the appellant from manufacturing, using, or selling the gasoline engine or tractor known as the "Lion tractor," embodying the construction and combinations set forth and claimed in the application for letters patent of the United States No. 865,463, filed by D. M. Hartsough, on October 7, 1914, or any traction engine or tractors embodying any of the constructions, or any of the distinguishing features of the so-called "Lion tractor," designed and invented by D. M. Hartsough, while in the employ of the plaintiff, from January 12, 1914, to November 13, 1914. The material allegations in the complaint, so far as they are necessary for a full understanding of the issues involved on this appeal, are:

That P. J. Lyons, the president of the plaintiff corporation, the Bull Tractor Company, had before the organization of that corporation been president of the Gas Traction Company, which was engaged in the manufacture and sale of a gasoline engine, known as the "Big 4," and has for a number of years been, actively and constantly, engaged in the manufacture and sale of gasoline traction engines, and thereby became personally well known in connection with the manufacture and sale of the latest and best types of such engines, so that the use of his name in connection with the manufacture and sale by plaintiff of such engines has become a valuable asset to the plaintiff.

That one D. M. Hartsough was the inventor of the gasoline tractor known as the "Big 4," and was one of the promoters of the company which first manufactured it. He was also the inventor of another traction engine, the one known as the "Bull tractor," also manufactured by the plaintiff. That on August 20, 1913, P. J. Lyons and one P. H. Knoll were copartners under the style of Lyons-Knoll Investment Company, and on that day they entered into a contract with Hartsough, whereby he agreed to convey to them the exclusive right to manufacture and sell in the United States the traction engine described as the "Little National tractor," and this contract was on January 6, 1914, assigned for a valuable consideration by Lyons and Knoll, together with all rights conveyed to them by Hartsough, to the plaintiff, a corporation formed for the purpose of engaging in the manufacture and sale of these tractors.

That many changes and improvements were made in the traction engine referred to in the contract with Hartsough, which was put upon the market on January 6, 1914, under the trade-mark of "Bull tractor," and this tractor was extensively advertised. That the uniform retail price for which this tractor is sold is $395, which was much less than tractors of that kind had theretofore been sold. The contract provided that, if the complainant complies with certain conditions, mentioned in the contract, for six months, then the contract shall remain in force as long as the parties comply with the terms of the

.contract, and Hartsough bound himself that "he will not, during the life of the agreement, connect himself directly or indirectly with the manufacture or sale of any similar competing machine, or which is an infringement on that machine."

That P. J. Lyons, one of the parties to the original contract, is president of the plaintiff company, and has been since it was incorporated, and before that time had been president of the Gas Traction Company, which had manufactured the gasoline traction engine known as the "Big 4." That said Lyons had, by reason of his connection with these companies, become well and favorably known, personally and by reputation, throughout the United States, to those contemplating the purchase of gasoline traction engines, to a greater extent than any other person engaged in the manufacture and sale of such engines, and that this reputation is a valuable asset belonging to the plaintiff now, so much so that the use of the name "Lion tractor," or any name of the same or a similar sound, would lead many purchasers to believe that it is manufactured by the company with which he was connected. That, before the plaintiff company was organized, Lyons and Hartsough had terminated their connection with the Gas Traction Company. That certain individuals, mentioned in the complaint, organized a company called the "Hartsough Tractor Company," which name was afterwards changed to "Lion Tractor Company," which was done for the purpose of misleading the public into the belief that the tractors which they were selling were those made by the plaintiff and Mr. Lyons.

That on January 12, 1914, Hartsough entered into a written contract with the plaintiff, by which he became associated with it in the capacity of mechanical adviser, his work to consist in giving assistance in the construction of plaintiff's tractor and to improve, simplify, cheapen, and accurate said tractor, and that he would commence the erection of an improved Bull tractor, to be built outside of plaintiff's factory, the expense of the experiments and building of such tractor to be paid by the plaintiff. It was further provided, that this contract was in no wise to alter, change, or amend the prior contract with Lyons & Knoll, or the plaintiff. Royalties were to be paid on both designs at the same rate as agreed upon in the first contract of August 20, 1913. There was also a provision in that last contract that the plaintiff could cancel the same if it desired to do so, the cancellation to take effect 30 days after notice thereof. On October 13, 1914, the plaintiff gave notice of cancellation of the second contract to Hartsough, and paid him in full for his services and expenditures up to November 13, 1914, the expiration of the 30 days.

That, soon after the second contract had been made with Hartsough, Hartsough informed plaintiff that he had begun work of completing an improved tractor, and presented his bills, which amounted to $2,434.36, to the plaintiff, all of which was paid by the plaintiff, who also paid him his salary for the entire time. That thereafter Hartsough exhibited to the plaintiff an incomplete two-wheel gasoline traction engine, upon which he was then working under the contract of January 12, 1914, stating that he would have the said engine completed, to be tested in a short time. That in September, 1914, Hartsough informed the plaintiff that he was building for it under the contract of January 12, 1914, a gasoline traction engine, that could be manufactured at an expense of $30 to $35 less than the Bull tractor, and was more effective. That about a week later he showed them that engine, and it is the same identical engine now designated by the defendant as the "Lion tractor," and on November 12, 1914, Hartsough made a test of this new engine in the presence of the officers of the plaintiff.

That by reason of the last contract, and the fact that all the expenses thereof, as well as the salary of Hartsough, were paid by the plaintiff, it is the owner thereof; but the defendant claims it as its property, designating it as the "Lion tractor," and that on October 25, 1914, the defendant advertised this tractor in a number of newspapers. In that advertisement it was stated that the defendant, then doing business as the "Hartsough Tractor Company," had been formed to manufacture and sell the tractor or engine invented by Hartsough, known as the "Lion tractor," and continued to advertise the same in a large number of newspapers. It also offered to sell this

"Lion tractor" for $50 less than the price at which the plaintiff sells its "Bull tractor."

That this was the first notice the plaintiff had that Hartsough had violated his agreement with it, and thereupon they immediately notified Hartsough, as well as all the parties composing the Hartsough Company, that the Bull Tractor Company had the exclusive right to manufacture and sell this machine in the United States, and called upon Mr. Hartsough to carry out the terms of his contract with them, and that, unless the defendant immediately abandoned the attempt to put this machine on the market, an action would be instituted to enjoin them.

That on October 7, 1914, Hartsough applied for letters patent upon the gasoline traction engine called the "Lion tractor." That before that time Hartsough had, without the knowledge or consent of the plaintiff, and in violation of his covenants contained in his contract with plaintiff, entered into negotiation with the said parties, comprising the defendant corporation, for the sale, assignment, and transfer to them of a half interest in the so-called "Lion tractor," for the use and benefit of the defendant.

In the contract made by Hartsough with these parties it was expressly provided: "The parties hereto, previous to the signing of this contract, have examined the application for letters patent, also the applications for letters patent on former tractors designed by Hartsough, and examined the contracts conveying the said rights to Lyons-Knoll Investment Company and the Bull Tractor Company, and agree that all expenses necessary to defend our joint rights in and to the above tractor, patents, and improvements, its manufacture and sale, shall be borne at the sole charge and expense of said corporation as above organized." This contract was made with one W. B. Ewing, who was to hold it for the use and benefit of the defendant corporation, to be formed, and which was formed, later.

That Hartsough and the defendant had a disagreement, which resulted in Hartsough instituting an action in one of the state courts of the state of Minnesota, for the purpose of canceling his contract with Ewing and the defendant.

That the purpose of the defendant in adopting the name of "Lion tractor" was with the intention of causing confusion between the business of plaintiff and its business, and it has caused such confusion, to the great detriment of the plaintiff. That the defendant has no right to the said so-called "Lion tractor," or to any invention embodying, or to any application for a patent, or to any patent that has and may hereafter be issued thereon, or therefor, or to manufacture and sell, or offer for sale, the so-called "Lion tractor"; its rights being based entirely upon its contract with Hartsough, as hereinbefore set out.

That the complainant has suffered great damage by reason of these acts. That on December 10, 1914, plaintiff and Hartsough entered into an agreement whereby they settled their former differences, wherein Hartsough acknowledged that the improvements and devices which resulted in these later tractors were conceived and invented by him while the contract of January 12, 1914, between him and the plaintiff was in full force. He thereupon again conveyed all of his right, title, and interest in all of these improvements and inventions to the plaintiff.

It is further charged that, notwithstanding the notices to the defendant, it continues to manufacture and offer for sale the so-called "Lion tractor," that it has little or no property with which to respond in damages for the loss the plaintiff will inevitably sustain by its acts, and therefore prays for an injunction.

The answer denies most of the allegations of the complaint, although it admits some. It denies that it had notice of the plaintiff's contract with Hartsough, but alleges that Ewing purchased Hartsough's rights in good faith and for a valuable consideration. It admits that Hartsough claims the right to repudiate this contract, and has instituted proceedings, as alleged by the complaint, and that these proceedings are still pending and undetermined.

It also alleges that, after it had acquired the rights of Ewing, under his contract with Hartsough, it proceeded at its own expense to plan and design

the tractor advertised, manufactured, and sold by it, and that the tractor they manufacture is planned, designed, made, and prepared for it, by its own agents and employés, and at its own expense; that it has adopted the name of "Lion tractor," as it had a right to do, and that said name is exclusively identified with the tractor of defendant's exclusive design, and that the purchasers have become and are thoroughly familiarized therewith, and know that this tractor is its machine, and in no wise connected with those manufactured by the plaintiff company; that the machine as designed and planned by Hartsough, and the right therein acquired from Hartsough, was never in fact completed or perfected by Hartsough or by this defendant, and that the "Lion tractor" manufactured by it is different entirely from the machine of the plaintiff and that designed by Hartsough; that no other person or association has any right to the trade-mark of the "Lion tractor," except the defendant, the same having been registered by it according to the laws of the United States.

The motion for an interlocutory injunction was heard on affidavits, and the interlocutory injunction granted as prayed. From the order granting the interlocutory injunction the defendant prosecutes this appeal.

Charles B. Elliott, of Minneapolis, Minn. (M. H. Boutelle, Arthur M. Higgins, and F. A. Whiteley, all of Minneapolis, Minn., on the brief), for appellant.

A. C. Paul, of Minneapolis, Minn. (Richard Paul and Frank C. Brooks, both of Minneapolis, Minn., on the brief), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge (after stating the facts as above). Counsel for appellant insist that the bill ought to have been dismissed for the failure to make W. B. Ewing and D. M. Hartsough parties to this action.

[1] It is a well-established rule in the courts of the United States that a suit in equity may proceed without the presence of all proper, or even necessary, parties; only indispensable parties must be joined. "An indispensable party is one who has such an interest in the subject-matter of the controversy that a final decree cannot be rendered in the suit, without injuriously affecting the absent party, or without leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience." Cella v. Brown (C. C.) 136 Fed. 439, affirmed 144 Fed. 742, 75 C. C. A. 608; Rogers v. Penobscot Mining Co., 154 Fed. 606, 616, 83 C. C. A. 380, 390; O'Neill v. Wolcott Mining Co., 174 Fed. 527, 536, 98 C. C. A. 309, 318, 27 L. R. A. (N. S.) 200; Silver King, etc., Mines Co. v. Silver King C. M. Co., 204 Fed. 166, 122 C. C. A. 402.

[2] It appears from the complaint, and it is also alleged in the answer and the affidavits presented by the defendant at the hearing, that Mr. Ewing had parted with all his right, title, and interest under Mr. Hartsough's contract to the defendant, and has no further interest in the result of this litigation, except such as he may have as a stockholder of the defendant corporation. Mr. Hartsough has also parted with his interest to the plaintiff. We see no necessity for making them parties, nor can we conceive of any right, title, or interest of these parties that can be affected by a decree in this cause. They are neither indispensable nor necessary parties.

[3] It is next claimed that, conceding that Hartsough bound himself to assign to the plaintiff all his later inventions improving the original invention, which he had assigned to the plaintiff, it would be unenforceable, as there was nothing then in existence to convey, and it would be in the nature of a mortgage on his future skill and ingenuity. But, as was held by Mr. Justice Bradley in Aspinwall Mfg. Co. v. Gill (C. C.) 32 Fed. 697, such a contention is not tenable; that a patentee has the right, when he sells or assigns his patent for a valuable consideration, to bind himself to assign to his vendee any patents that he may obtain for improvements of the patented article, which he sold. See also Reece Folding Machine Co. v. Fenwick, 140 Fed. 287, 72 C. C. A. 39, 2 L. R. A. (N. S.) 1094. And this is certainly the law, when a part of the consideration for the assignment is his employment for that purpose by the vendee, and the improvements are invented while thus employed.

It is also claimed that the evidence did not justify the granting of the interlocutory injunction. The contract between Mr. Ewing and Mr. Hartsough, under which the defendant now claims, shows that Ewing had "examined the contracts conveying said rights to the Lyons-Knoll Investment Company and the Bull Tractor Company, and agreed that all expenses necessary to defend our joint rights in and to the above tractor, patents, and improvements, its manufacture and sale, shall be borne at the sole charge and expense of said corporation as above organized," meaning the corporation to be organized by Ewing. The defendant is therefore chargeable with notice of the contents of the contract between Hartsough and Lyons-Knoll, the plaintiff's grantors.

[4] As to the other matters put in issue by the answer the evidence is conflicting. When this is the case "the granting or dissolution of an interlocutory injunction rests in the sound judicial discretion of the court of original jurisdiction, and, when that court has not departed from the rules and principles of equity established for its guidance, its orders in this regard may not be reversed by the appellate court without clear proof that it abused its discretion. * * * It is to the discretion of the trial court, not to that of the appellate court, that the law has intrusted the power to grant or dissolve such an injunction." American Grain Separator Co. v. Twin City Separator Co., 202 Fed. 206, 120 C. C. A. 644; Magruder v. Belle Fourche Valley Water Users Association, 219 Fed. 72, 135 C. C. A. 644; Kansas City v. Sanitary Street Flushing Machine Co., 224 Fed. 964, 140 C. C. A. 456. A careful reading of the testimony fails to show any departure from this well-established rule, and clearly no such abuse of discretion as would justify this court to set aside its findings upon this appeal.

It is also assigned as error that the order for the temporary injunction does not state specifically, and does not describe in a reasonable detail, what the defendant is enjoined from doing. The order enjoins the defendant from "manufacturing, using, selling, or offering for sale any gasoline traction engines or tractors embodying the construction and combinations set forth and claimed in the application for let-

231 F.—11

ters patent of the United States No. 865,463, filed by D. M. Hartsough on the 7th day of October, 1914." And this, it is claimed, is not a compliance with section 19 of the Clayton Act of October 15, 1914 (38 Stat. 730, 738, c. 323).

Whether the order complies strictly with the requirements of that act we deem it unnecessary to determine, as this objection was not made in the court below, but was raised for the first time in this court. Had the attention of the trial judge been called to that fact, we have no doubt that he would have considered it, and, if necessary, followed the statute literally. Besides, this is an interlocutory injunction, and, when the case is returned to the court below, that court can amend its order, if deemed necessary.

The decree granting the interlocutory injunction is affirmed.