## SECURITY METAL PRODUCTS CO. et al. v. KAWNEER CO.

(Circuit Court of Appeals, Eighth Circuit. July 16, 1926.)

### No. 7132.

Appeal and error ⬅️954(1)—Injunction ⬅️135—Granting of preliminary injunction is within court's sound discretion, and will be reversed on appeal only for abuse of discretion by trial court.

The granting of a preliminary injunction is within the sound judicial discretion of the trial court, and, where the questions in issue are difficult questions of fact, or of mixed fact and law, and must be determined on conflicting testimony, the granting of an injunction will not be reversed on appeal, especially when the balance of injury as between the parties favors its issue.

Appeal from the District Court of the United States for the Western District of Missouri.

Suit by the Kawneer Company against the Security Metal Products Company and others. From an order granting a preliminary injunction, defendants appeal. Affirmed.

Raymond G. Barnett and James A. Reed, both of Kansas City, Mo. (John M. Cleary, of Kansas City, Mo., on the brief), for appellants.

Wallace R. Lane, of Chicago, Ill. (Ralph M. Snyder, of Chicago, Ill., and Henry L. McCune, of Kansas City, Mo., on the brief), for appellee.

Before STONE, KENYON, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge. This is an appeal from an order of the District Court for the Western District of Missouri, dated May 19, 1925, granting a preliminary injunction against appellants, defendants below. The order was based on the verified bill of complaint filed January 2, 1924, and a large number of affidavits and exhibits introduced by the respective parties.

There is evidence in the record tending to establish the following facts: About 1906, Plym, president of the plaintiff company, invented certain improvements in store front constructions, and obtained patents thereon, among them No. 852,450 May 7, 1907. A corporation was organized by Plym, called the Kawneer Manufacturing Company; and the manufacture of this patented construction was carried on for some time at Kansas City for this company by the Henry Weiss Cornice Company, of which the defendant Ross was foreman. In 1909 the defendants Ross and Rhoads purchased control of the Ritzler Metal Manufacturing Company (then known as the J. A. Ritzler Cornice & Ornament Company). That company in 1909 or early in 1910 began manufacturing a construction claimed by Plym to be an infringement of his patent. The Ritzler Company in 1910 made a five-year contract with the Pittsburgh Plate Glass Company for sale to it of the product so manufactured. Suit for infringement was brought by the Kawneer Manufacturing Company against the Pittsburgh Plate Glass Company in August, 1910, in the Northern district of Illinois; and on December 16, 1912, decree went for plaintiff. An appeal was taken. A similar suit was brought against the Ritzler Company in the Western district of Missouri. That suit went to decree for plaintiff by consent March 12, 1913.

Meanwhile, after the entry of decree in the Northern district of Illinois, Ross and Rhoads and the Ritzler Company entered into negotiations for an agreement with Plym and the Kawneer Manufacturing Company. Pending negotiations, a license was granted by the Kawneer Manufacturing Company to the Ritzler Company to continue the manufacture of the accused product. The result of the negotiations was the making of two contracts dated February 12, 1913; one between the Kawneer Manufacturing Company and the Ritzler Company, and the other between Plym, Ross, and Rhoads.

The former, called for convenience "the corporation contract," provided for the organization of a new corporation, to be called "The Kawneer Company," which should purchase the assets, tangible and intangible, of both the Kawneer Manufacturing Company and the Ritzler Company, including patents owned by the respective companies. Payment was to be made therefor in stock of the new company; preferred for the tangible assets, common for the intangible. The value of the physical assets was to be determined by agreement or appraisement. Manufacture of the product was to be carried on by the new company. Pending litigation was to be disposed of by agreement of counsel. This contract also provided that the new Kawneer Company should use its best efforts to acquire any and all improvements relating to store front constructions and United States letters patent therefor which should seem to be of commercial value in the business.

The second contract, called for convenience "the individual contract," provided as follows:

"Agreement made this 12th day of February, 1913, by and between Francis J. Plym, of Niles, Mich., Vernon Ross, of Kansas City, Mo., and Errett S. Rhoads of Kansas City, Mo., witnesseth:

"Whereas, the parties above mentioned are now interested in the business of the manufacture and sale of store front constructions, and it has been agreed that a corporation shall be organized to be known as the Kawneer Company, to purchase the interests of the said parties in said business, including all the assets and good will connected therewith:

"Now, therefore, it is mutually covenanted and agreed by and between the said parties jointly and severally that any and all improvements in store front constructions made by each, any, or all of them during the terms of any letters patent now in force or patents which may be obtained upon applications now pending in the name of either or any of them, shall without any further or additional consideration be assigned and transferred unto the said Kawneer Company, and each of the parties agrees to execute any papers or documents necessary for fully protecting such inventions or in consummating their transfer.

"It is further agreed by and between the parties hereto that during the period above specified they will not, nor will any of them become or be connected with the manufacture or sale of store front constructions either directly or indirectly, otherwise than in connection with the business of the said Kawneer Company to be organized.

"Francis J. Plym.
"Vernon Ross.
"Errett S. Rhoads."

The patents and applications for patents, owned or standing in the names of either of

the corporations or of the individuals, were assigned to a trustee to be assigned by him to the new corporation when formed.

March 9, 1913, the appeal of the Pittsburgh Company was dismissed by consent. About a week after the date of the two contracts, suggestion was made by the Kawneer Manufacturing Company or Plym or their attorney, that, instead of organizing a new corporation, use might be made of the Kawneer Manufacturing Company by changing its name and increasing its capital stock. This modification of the corporation contract was expressly acquiesced in by all of the stockholders of the Ritzler Company—three in number, Ross, Rhoads, and Cleary—at a special meeting of stockholders on April 28, 1913. The name of the Kawneer Manufacturing Company was changed to Kawneer Company on April 26, 1913; changed back to Kawneer Manufacturing Company May 20, 1913; changed again to the Kawneer Company January 16, 1920; but during all the times involved herein the identity of the corporation has remained unchanged. It will hereafter be called plaintiff.

On May 13, 1913, a contract was entered into between plaintiff and Ross and Rhoads personally (but recited to be supplemental to the corporation contract of February 12, 1913). It provided, among other things, for the employment by plaintiff of Ross and Rhoads at a salary of $300 per month each, the term of employment to terminate as soon as plaintiff should buy their preferred stock at par.

May 20, 1913, the final papers were passed, completing the transaction outlined in the corporation contract of February 12, 1913, as modified; bill of sale covering the personal property of the Ritzler Company was executed and delivered to plaintiff by Ross and Rhoads, who had previously had that company transfer the property to them; a second supplemental contract was made by plaintiff with Ross and Rhoads covering some details of the transaction; stock was issued and delivered to Ross and Rhoads as agreed upon; a special meeting of the stockholders was held; new by-laws were adopted; the bill of sale and the supplemental contract both of May 20, 1913, were ratified; Rhoads was elected a director. He was re-elected from time to time until 1916, when he declined re-election.

May 21, 1913, the Ritzler Company authorized Lane, as trustee, to file for record assignments of the patents, which he held as trustee, to the Kawneer Company.

Plaintiff continued to carry on the business, and Ross and Rhoads remained in its employment for several years. During this time there was no suggestion by any one that the individual contract of February 12, 1913, was not in force.

In January, 1914, Ross and Rhoads advised plaintiff that they were in need of money and asked whether it would be possible to dispose of part of their stock. April 28, 1914, a contract was made by plaintiff with Ross and Rhoads for the purchase of their preferred stock in installments.

In June, 1914, Rhoads wrote to Plym, president of plaintiff company, as follows:

"We take this opportunity to say that the arrangements, as they now stand, are entirely satisfactory with us, and it is, of course, to our mutual benefit to work in harmony and do our utmost to bring about the proper results. We feel that the fighting is now over between us, and that since we are associates that to do anything but our best would be working against our own interests, and you can rest assured that we will run this business, giving it the same efforts and services as we have heretofore."

In April, 1916, a contract was made by plaintiff with Ross to purchase the common stock owned by him; he apparently having bought the stock owned by Rhoads. The exact date when Ross and Rhoads left the employment of plaintiff is not disclosed in the record.

In 1921, Ross and Rhoads organized a corporation named Ross-Rhoads Company, which afterward changed its name to Security Metal Products Company, defendant herein. This company, in the same year, began the manufacture of store front constructions. Rhoads ceased to have connection with the company in 1922. Ross continued with the company.

September 26, 1922, a patent, No. 1,430,117, was issued to the Ross-Rhoads Company covering an invention of Ross and Rhoads for store front construction. October 3, 1922, a patent, No. 1,430,757, was issued to the same company covering window front construction invented by Ross and Rhoads.

November 13, 1923, plaintiff's attorney wrote to Ross and Rhoads, calling their attention to the individual contract of February 12, 1913, and demanding an assignment of the patents last mentioned and a discontinuance of the manufacture by them or defendant company of store front constructions. The demand was not complied with. The present suit was begun January 2, 1924.

There is also evidence in the record tending to prove that the individual contract dat-

ed February 12, 1913, was not in fact made on that date, but later, that the corporation contract of that date was complete in itself, and that the individual contract was a subsequent independent contract and was without consideration.

There is also evidence in the record tending to prove that the individual contract was made in contemplation of the formation of a new corporation, which was never in fact formed; that the corporation contract was abandoned; that the sale of the assets and business of the Ritzler Company was made under new agreements and upon new terms and conditions; that the individual contract never became effective; and that no express reference was made to it in the subsequent contracts of the parties or in their correspondence until 1923.

There is also evidence in the record tending to prove that, even though the Ritzler Company may have acquiesced in the modification of the corporation contract by which the formation of a new corporation was dispensed with, yet Ross and Rhoads individually never consented to, nor acquiesced in, such change; that Ross and Rhoads have never agreed to assign future patents secured by them to plaintiff, and have never agreed not to become competitors of plaintiff in the manufacture of store front constructions.

The trial court became satisfied from the evidence that the individual contract of February 12, 1913, was a valid and subsisting contract, that plaintiff was a beneficiary thereunder, and that defendants had violated the terms of the contract in 1922 by entering upon and thereafter continuing the manufacture of store front constructions. A preliminary injunction accordingly issued.

The assignments of error, 34 in number, are prolix and repetitious. They raise three main questions: (1) Whether the individual contract of February 12, 1913, is subsisting and valid. (2) Whether defendants have committed breaches of that contract. (3) Whether plaintiff company is a proper party plaintiff, and is in position to maintain this suit for breaches of the contract. Each of these three main questions involve subsidiary questions of fact.

Upon these three main questions the trial court expressed its opinion favorable to plaintiff. We are earnestly solicited by appellants to decide that this opinion of the trial court as to the facts was erroneous. We are solicited with equal earnestness by respondent to decide that the opinion of the trial court was correct. We think that it is neither necessary nor advisable for us to do either in determining this appeal.

The rules governing the issuance of preliminary injunctions by trial courts are well settled.

In Prendergast v. N. Y. Tel. Co., 262 U. S. 43, 50, 43 S. Ct. 466, 469 (67 L. Ed. 853), the Supreme Court said:

"It is well settled that the granting of a temporary injunction, pending final hearing, is within the sound discretion of the trial court; and that, upon appeal, an order granting such an injunction will not be disturbed unless contrary to some rule of equity, or the result of improvident exercise of judicial discretion. Meccano, Limited, v. John Wanamaker, 253 U. S. 136, 141 [40 S. Ct. 463, 64 L. Ed. 882]; Love v. Atchison Railway, supra [185 F.] page 331; and cases there cited. Especially will the granting of the temporary writ be upheld, when the balance of injury as between the parties favors its issue."

In Love v. Atchison, T. & S. F. Ry. Co., 185 F. 321, 331, 107 C. C. A. 403, 413, this court said:

"It is a familiar rule of equity jurisprudence that, if the questions presented in a suit for an injunction are grave and difficult, and the injury to the moving party will be certain, great, and irreparable if the motion for the interlocutory injunction is denied and the final decision is in its favor, while if the decision is otherwise, and the injunction is granted, the inconvenience and loss to the opposing party will be inconsiderable, or probably may be indemnified by a bond, the injunction usually should be granted."

In American Grain Separator Co. v. Twin City Separator Co., 202 F. 202, 206, 120 C. C. A. 644, 648, this court said:

"The granting or dissolution of an interlocutory injunction rests in the sound judicial discretion of the court of original jurisdiction, and, where that court has not departed from the rules and principles of equity established for its guidance, its orders in this regard may not be reversed by the appellate court without clear proof that it abused its discretion. The question is not whether or not the appellate court would have made or would make the order. It is to the discretion of the trial court, not to that of the appellate court, that the law has intrusted the power to grant or dissolve such an injunction, and the question here is: Does the proof clearly establish an abuse of that discretion by the court below?"

See Magruder v. Belle Fourche, etc., Ass'n, 219 F. 72, 82, 135 C. C. A. 524 (C. C. A. 8); Kansas City, Mo., v. Sanitary, etc., Co., 224 F. 964, 140 C. C. A. 456 (C. C. A. 8); Lion Tractor Co. v. Bull Tractor Co., 231 F. 156, 161, 145 C. C. A. 344 (C. C. A. 8);

City of Winfield v. Wichita Co., 267 F. 47 (C. C. A. 8); El Dorado & W. Ry. Co. v. C., R. I. & P. Ry. Co., 5 F.(2d) 777 (C. C. A. 8).

And the rules governing the appellate court have been no less clearly stated.

In Love v. Atchison, T. & S. F. Ry. Co., supra, this court said:

"Counsel for the defendants below insist that these injunctions should be dissolved, because this finding and the court's findings of * * * many of the other constituent facts which led up to the ultimate conclusion, are not sustained by the evidence.

"But the granting or withholding of an interlocutory injunction rests in the sound judicial discretion of the court of original jurisdiction, and where, as in the case in hand, that court has not departed from the equitable principles established for its guidance, its orders may not be reversed by the appellate court, without clear proof that it has abused its discretion."

In Allen v. Omaha Co. (C. C. A.) 275 F. 1, this court said:

" * * * Ordinarily the appellate court on such an appeal will not go into the merits of the case, further than necessary to determine whether the trial court exceeded a reasonable discretion in making the order, especially where the rights of the parties can only be determined upon full proof of the facts."

See, also, American Grain Separator Co. v. Twin City Separator Co., 202 F. 202, 208, 120 C. C. A. 644 (C. C. A. 8).

In City of Chicago v. Fox Film Corp., 251 F. 883, 164 C. C. A. 99, the court said:

"A pendente lite injunctional order will not be reversed unless there was an abuse of discretion; and this can only appear from an obvious misunderstanding of the facts or a palpable misapplication of well-settled rules of law on the part of the trial judge."

See Prendergast v. N. Y. Tel. Co., supra; Owen v. Perkins, etc., Co. (C. C. A.) 2 F.(2d) 247.

We have carefully examined the present record in the light of the foregoing rules. We find no obvious misunderstanding of the facts or palpable misapplication of well-settled rules of law on the part of the trial judge. The questions involved were grave and difficult, questions of fact, or of mixed law and fact. Certain, great, and irreparable injury would be suffered by plaintiff if the motion for a preliminary injunction were not granted, and final decision should be in its favor. Loss and inconvenience to the defendants could probably be indemnified by a bond. The order for preliminary injunction was not made hastily, but after full argument and deliberate consideration. There was no departure by the court from the rules and principles of equity established for its guidance. There was no abuse of discretion.

What was said by this court in Fireball, etc., Co. v. Commercial, etc., Co., 198 F. 650, 658, 117 C. C. A. 354, 362, is peculiarly applicable here:

"The decisions of many of the questions the defendants present must be determined by the consideration of conflicting testimony, many of the questions they raise are questions of mixed law and fact, the just determination of which may be much aided by the testimony of witnesses, the interests involved here are large, and, in the condition of the litigation concerning this patent [contract in present case], the ends of justice would be better and more certainly attained by reserving, and we do hereby reserve, our opinion upon all the questions it presents, except the question of the abuse by the court below of its discretion in the issue of the injunction, until the affidavit stage of this proceeding shall have been passed, until the rights of these parties shall have been tested by the production, hearing, and cross-examination of their witnesses according to the salutary and searching practice of the common law, and until the court below, at the final hearing, has investigated and decided the issues these parties raise in the light of that testimony and of the argument of counsel."

Order affirmed.