**PRATT, Regional Director, et al. v. STOUT et al. ***

No. 10584.

Circuit Court of Appeals, Eighth Circuit.
Aug. 5, 1936.

*Rehearing denied Oct. 5, 1936.

G. L. Patterson, Regional Atty., National Labor Relations Board, of Washington, D. C. (Charles Fahy, Gen. Counsel, National Labor Relations Board, Robert B. Watts, Associate Gen. Counsel, National Labor Relations Board, and I. S. Dorfman, John J. Babe, and Charles A. Wood, Attys. National Labor Relations Board, all of Washington, D. C., on the brief), for appellants.

John G. Madden, of Kansas City, Mo. (Alfred Kuraner and Madden, Freeman & Madden, all of Kansas City, Mo., on the brief), for appellees.

Before GARDNER and SANBORN, Circuit Judges, and NORDBYE, District Judge.

SANBORN, Circuit Judge.

This is a suit in equity for an injunction against the appellants, who are a Regional Director and the members of the National Labor Relations Board, restraining them from prosecuting a complaint issued by the board charging the appellees with unfair labor practices affecting commerce, and from enforcing the provisions of the National Labor Relations Act (49 Stat. 449, 29 U.S.C. § 151 et seq., 29 U.S.C. A. § 151 et seq.) against the appellees.

In their complaint in this suit the appellees assert the unconstitutionality of the act, the threat of irreparable injury to them by virtue of the proceedings of the board, and the inadequacy of any remedy available to them at law. They applied to the court below for a temporary injunction. The appellants filed a return to the order requiring them to show cause why such an injunction should not issue, and moved to dismiss the appellees' complaint for want of equity. The application for the temporary injunction and appellants' motion to dismiss were heard together. The court entered a decree denying the motion to dismiss the complaint, and granted the application for the temporary injunction. See Stout et al. v. Pratt et al. (D.C.) 12 F.Supp. 864. Complete and detailed findings of fact and conclusions of law were filed.

The complaint alleged, and the court found, in substance, as follows: That the complainants (appellees) are residents of Tennessee and a copartnership engaged at Aurora, Mo., in the business of manufacturing flour and similar products under the name of the Majestic Flour Mill; that the defendants are as hereinbefore stated; that the case is one arising under the Constitution and laws of the United States; that it is a civil action; and that the amount in controversy exceeds $3,000. That complainants, ever since the passage of the National Labor Relations Act on July 5, 1935, have been engaged exclusively in the intrastate business of milling and manufacturing flour and similar products at Aurora, Mo., and have at no time been engaged in commerce between the states; that at least 75 per cent. of the raw products used in the mill have been grown and purchased locally, and not more than 25 per cent. thereof have originated outside the state; that the movement of the raw products originating outside of Missouri terminated upon delivery at the mill; that the products manufactured at the mill were not destined for any particular points of delivery or any particular purchaser; that a substantial portion of such products, upon sale by complainants, reached points both within and without Missouri; that the employees of complainants are local employees who reside in Aurora and are there engaged exclusively in the manufacturing activities of complainants, and that none of such employees are engaged in the purchase of raw materials, the sale of the finished products or the transportation of products either raw or manufactured. That in June, 1935, a controversy arose between complainants and their employees as to wages and hours of labor; that a compromise was reached and the mill continued operations; that further demands were then made by the employees, including a demand that complainants enter into a contract with a labor union providing for a "closed shop," increased wages, a conditional right to discharge any employee, and operation of the mill under supervision of a "grievance committee" designated by the union. That complainants increased wages as demanded, declined to enter into a contract with the labor union, but endeavored to cooperate with the committee appointed by the union. That additional demands were made for a reduction of hours without reduction of pay, the right of the employees to select a foreman in charge of plant operations, and the right of employees to determine the number of men to be employed in the several operations involved in manufacturing. That because of the de-

mands of the union and of complainants' employees and the increased cost of manufacturing resulting therefrom, complainants were forced to shut down their mill on August 20, 1935, retaining only sufficient employees to purchase wheat locally produced and to protect their property. That the Chamber of Commerce of Aurora intervened as a mediator, and, at its instance and request, complainants made an offer to pay increased wages for the same hours of labor as had previously prevailed; that this offer was recommended for acceptance by the mediator and was satisfactory to the employees; but that the employees insisted upon the execution of the contract heretofore mentioned with the union, which contract complainants refused to execute. That thereafter complainants reopened their mill, re-employed all former employees who applied, and, in so doing, bargained with such employees individually, and thereupon complainants resumed manufacturing operations at the mill. That on November 3, 1935, the National Labor Relations Board issued a complaint against complainants, charging them with unfair labor practices affecting commerce; alleging the purchase by complainants of raw materials in states other than Missouri, and the sale and transportation in interstate commerce of a large part of their manufactured product; the designation by their employees of a certain union as the representative of such employees for the purposes of collective bargaining; the request by the union on August 20 and 29, 1935, that the complainants bargain with said union as the exclusive representative of all employees; the refusal by complainants to bargain collectively; their bargaining individually with each employee; their refusal to recognize or deal with the union; the requesting and urging of their employees to terminate their membership in the union, and the inducing of some employees to joint a company union. That complainants were allowed five days to answer the complaint issued by the board, which was set for hearing at Springfield, Mo., on November 21, 1935. That defendants have heretofore caused an investigator to intrude into complainants' mill, asserting the right to examine complainants' books and records and to interview complainants' employees; that defendants threaten and intend to cause other investigators thus to intrude and to interfere with the discharge of complainants' business and their relations with their employees; that defendants threaten and intend, by subpœna, to compel upon the hearing the production of private books and records of complainant and to make public disclosure thereof, and to compel the attendance of complainants' representatives and employees as witnesses; that said acts of the defendants would disrupt and interfere with the business of complainants and their contractual relations with their employees; that defendants threaten and intend to order and direct complainants to restore a large number of employees to work and to pay said employees wages during the period that they have rendered no service therefor; that all of such acts, threatened and intended, constitute irreparable injury to complainants; that complainants cannot resist or defend against the charges except at great expense, and that to defend would require the production as witnesses of over one hundred persons and the payment of their witness fees and transportation from Aurora to Springfield, and the production of such witnesses at prohibitive expense before the Board at Washington, D. C.; that such expense, as well as that of retaining counsel, will be irrecoverable; that the necessary witnesses would include all of the employees of complainants at their mill, with the result that the hearing would, during its continuance, disrupt complainants' business; that if the complainants should seek to prevent the intrusion of the board's investigators or should resist, prevent, or interfere with the defendants or their representatives in the enforcement of the act, they would, by the terms of the act, be subjected to a fine of $5,000 or imprisonment for one year, or both, for each purported violation of the act; that, because of these penalties, the complainants cannot prevent the attendance of their representatives, who will, under threat of penalties, be compelled to disclose confidential information pertaining to the complainants' business, all to the complainants' irreparable injury. That the pendency of the complaint with the board and the continuance of said proceedings against complainants would result in the harassment of complainants, the disruption of all harmony in the relations between them and their employees, and the impairment or destruction of the good will of complainants' business; that, by reason of the pendency of the proceedings and the publicity attendant thereon, complainants would be held up to public scorn, hatred, and contempt as violators of the law of the United States, to their irreparable damage; and that such

damage will accrue and will cause complainants irreparable loss even though no attempt is made by the defendants to cause or to procure the enforcement of any order or orders against complainants by judicial proceedings. That complainants, in addition to their milling business at Aurora, own three other mills within the jurisdiction of the court and eight plants and places of business employing labor at other points in the United States; that in each and all of said plants, relations, negotiations, and dealings with their employees have been conducted by complainants in the same manner and upon the same basis and with the same incidents as in the mill at Aurora; that complainants are threatened with innumerable other complaints of a similar nature.

The conclusions of law of the trial court were in substance these: That jurisdiction existed to issue a temporary injunction; that the relations between the complainants and their employees are within the purported terms of and purportedly subject to the National Labor Relations Act, and the complainants, by bargaining individually with their employees, committed a violation of the terms of the act; that the act in its purported application to complainants, their business, and their relations to their employees, is in excess of the powers of Congress and wholly unconstitutional and void; that complainants are threatened with irreparable injury from the acts and threatened acts of the defendants, and have no adequate remedy at law; that the motion to dismiss should be denied; and that the complainants are entitled to a temporary injunction restraining the defendants, during the pendency of the suit, from the further prosecution of the complainants, from further enforcement of the act against complainants at their mill at Aurora, and from interfering or attempting to interfere with the conduct of complainants' business or the relations between complainants and their employees.

[██] There is in the record no approved statement of the evidence presented upon the application for the temporary writ, and we find nothing in the record which would justify the assumption that we have before us all of the evidence upon which the findings of fact were based. We must therefore take the facts to be as the trial court has found them. King Lumber Co. et al. v. Benton et al. (C.C.A.5) 186 F. 458, 549; Carson et al. v. Hurt (C.C.A.5) 250 F. 30;

Buessel v. United States (C.C.A.2) 258 F. 811; Oriole Phonograph Co. et al. v. Kansas City Fabric Products Co. et al. (C.C.A. 8) 34 F.(2d) 400, 401; A. C. Motor Freight Lines, Inc., v. Shingledecker (C.C.A.7) 70 F.(2d) 827, 828. The result of the trial court's inquiry into the issues and facts is set forth in the findings and conclusions (see Public Service Commission of Wisconsin et al. v. Wisconsin Telephone Co., 289 U.S. 67, 71, 53 S.Ct. 514, 77 L.Ed. 1036), and such findings are presumptively correct. Stearns-Roger Mfg. Co. v. Brown (C.C.A.8) 114 F. 939, 943.

The question with which we are directly concerned on this appeal is not the constitutionality of the National Labor Relations Act, but the propriety of the granting by the court below of a temporary injunction requiring a stay of further proceedings by the board during the pendency of this suit.

[██] The granting or denial of a temporary injunction pending final hearing is within the sound judicial discretion of the trial court, and upon appeal an order granting such an injunction will not be disturbed unless contrary to some rule of equity or the result of an improvident exercise of judicial discretion. Especially will the granting of a temporary writ be upheld when the balance of injury as between the parties favors its issue. Prendergast v. New York Tel. Co., 262 U.S. 43, 50, 43 S. Ct. 466, 67 L.Ed. 853; Meccano, Ltd., v. John Wanamaker, 253 U.S. 136, 141, 40 S. Ct. 463, 64 L.Ed. 822; Love et al. v. Atchison, T. & S. F. Ry. Co. (C.C.A.8) 185 F. 321; Security Metal Products Co. et al. v. Kawneer Co. (C.C.A.8) 14 F.(2d) 569; Special School Dist. v. Speer (C.C.A.8) 75 F.(2d) 420.

[██] If the questions presented by a suit for an injunction are grave and difficult and the injury to the moving party will be certain, substantial, and irreparable if the motion for a temporary injunction is denied and the final decision is favorable, while if the motion is granted and the decision is unfavorable the inconvenience and loss to the opposing party will be inconsiderable or he may be protected by a bond, the injunction usually should be granted. City of Newton et al. v. Levis (C.C.A.8) 79 F. 715, 718; Denver & R. G. R. Co. et al. v. United States (C.C.A.8) 124 F. 156, 160; Henry Gas Co. v. United States (C.C.A.8) 191 F. 132; Massie et al. v. Buck (C.C.A. 5) 128 F. 27, 31, 32; King Lumber Co. et

al. v. Benton et al. (C.C.A.5) 186 F. 458, 459, supra; Love et al. v. Atchison, T. & S. F. Ry. Co. (C.C.A.8) 185 F. 321, 331, supra; Security Metal Products Co. et al. v. Kawneer Co. (C.C.A.8) 14 F.(2d) 569, 575, supra; Ohio Oil Co. v. Conway, 279 U.S. 813, 815, 49 S.Ct. 256, 73 L.Ed. 972.

When the nature of the questions which arise upon a suit make them a proper subject for deliberate examination, and if a stay of proceedings will not result in too great injury to the defendants, it is proper to preserve the existing state of things until the rights of the parties can be fairly and fully investigated and determined. Hadden et al. v. Dooley et al. (C.C.A.2) 74 F. 429, 431; Blount v. Societe Anonyme du Filtre, etc. (C.C.A.6) 53 F. 98, 101.

Since the granting or withholding of a temporary injunction rests in the sound judicial discretion of the trial court to which the application is made, its order may not be reversed by the appellate courts without clear proof of an abuse of discretion, even though the appellate court, under the same circumstances, would have made a different order. American Grain Separator Co. et al. v. Twin City Separator Co. (C.C.A.8) 202 F. 202, 206; Allen v. Omaha Live Stock Commission Co. (C. C.A.8) 275 F. 1; Security Metal Products Co. et al. v. Kawneer Co. (C.C.A.8) 14 F. (2d) 569, 575, supra; Special School Dist. v. Speer (C.C.A.8) 75 F.(2d) 420, 422, supra.

Ordinarily an appellate court, upon an appeal from an order granting or denying a temporary injunction, will not go into the merits of the case further than is necessary to determine whether the trial court exceeded a reasonable discretion in making the order, and this is especially true where the rights of the parties can only or can better be determined upon full proof of the facts. Allen v. Omaha Live Stock Commission Co. (C.C.A.8) 275 F. 1, supra; Security Metal Products Co. et al. v. Kawneer Co. (C.C.A.8) 14 F.(2d) 569, 575, supra; Special School Dist. v. Speer (C.C.A.8) 75 F.(2d) 420, 422, supra; Blount v. Societe Anonyme du Filtre, etc., (C.C.A.6) 53 F. 98, 102, supra.

"A pendente lite injunctional order will not be reversed unless there was an abuse of discretion; and this can only appear from an obvious misunderstanding of the facts or a palpable misapplication of well-settled rules of law on the part of the trial judge." City of Chicago et al. v. Fox Film Corporation (C.C.A.7) 251 F. 883; Security Metal Products Co. et al. v. Kawneer Co. (C.C.A.8) 14 F.(2d) 569, 576, supra.

While "it is settled that the mere fact that a law is unconstitutional does not entitle a party to relief by injunction against proceedings in compliance therewith, but it must appear that he has no adequate remedy by the ordinary processes of the law, or that the case falls under some recognized head of equity jurisdiction" (Cruikshank v. Bidwell, 176 U.S. 73, 80, 20 S.Ct. 280, 283, 44 L.Ed. 377), there is no doubt as to the power of a court of equity to enjoin even criminal proceedings under alleged unconstitutional statutes when essential to the safeguarding of rights of property and when circumstances are exceptional and the danger of irreparable loss is both great and immediate. Sparks v. Mellwood Dairy et al. (C.C.A.6) 74 F. (2d) 695, 697; Stafford v. Wallace, 258 U.S. 495, 512, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229; Cline v. Frink Dairy Co., 274 U.S. 445, 452, 47 S.Ct. 681, 71 L.Ed. 1146; Fenner v. Boykin, 271 U.S. 240, 243, 46 S.Ct. 492, 70 L.Ed. 927; Packard v. Banton, 264 U.S. 140, 44 S.Ct. 257, 68 L. Ed. 596; Hygrade Provision Co. v. Sherman, 266 U.S. 497, 502, 45 S.Ct. 141, 69 L. Ed. 402; Terrace v. Thompson, 263 U.S. 197, 214, 44 S.Ct. 15, 68 L.Ed. 255; Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.(N.S.) 932, 14 Ann. Cas. 764; Davis & Farnum Mfg. Co. v. Los Angeles, 189 U.S. 207, 218, 23 S.Ct. 498, 47 L.Ed. 778; Dobbins v. Los Angeles, 195 U.S. 223, 236, 241, 25 S.Ct. 18, 49 L. Ed. 169; In re Sawyer, 124 U.S. 200, 209, 211, 8 S.Ct. 482, 31 L.Ed. 402; Pierce v. Society of the Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468; Village of Euclid et al. v. Ambler Realty Co., 272 U.S. 365, 386, 47 S.Ct. 114, 71 L. Ed. 303, 54 A.L.R. 1016.

Are the questions presented by this suit grave and difficult?

The act creates a board empowered to prevent any employer from engaging in any unfair labor practice affecting commerce. Commerce, by the terms of the act (section 2, 49 Stat. 450, 29 U.S.C.A. § 152), is "trade, traffic, commerce, transportation, or communication among the several States," etc. The term "affecting commerce," as used in the act, means "in commerce, or burdening or obstructing commerce or the

free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." The term "employer" includes any person acting for an employer, but excludes the United States, the states, persons subject to the Railway Labor Act, and labor organizations (except when acting as employers); and the term "employee" includes any employee except an agricultural laborer, a domestic servant, or an individual employed by his parent or spouse. There are five "unfair labor practices" denounced by the act (section 8, 49 Stat. 452, 29 U.S.C.A. § 158). They are: (1) To interfere with, restrain, or coerce employees in the exercise of their rights to organize and to bargain collectively through representatives of their own choosing; (2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it (under the rules of the board, however, an employer may permit his employees to confer with him during working hours without loss of time or pay); (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment, to encourage or discourage membership in any labor organization; (4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under the act; (5) to refuse to bargain collectively with the representatives of the employees. The act provides (section 9(a), 49 Stat. 453, 29 U.S.C.A. § 159 (a): "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer." The scheme for enforcing the provisions of the act is substantially that of the act creating the Federal Trade Commission (38 Stat. 717, 719, § 5 [15 U.S.C.A. § 45]). The board issues a complaint, investigates, holds hearings, and subpœnas witnesses. It may dismiss a complaint or it may make a cease and desist order. It can enforce its cease and desist orders only through the Circuit Courts of Appeals. It can only compel obedience to its subpœnas through court orders. Section 12 of the National Labor Relations Act, 49 Stat. 456, 29 U.S.C.A. § 162, however, provides that any one who willfully resists, prevents, impedes, or interferes with a member of the board or any of its agents or agencies in the performance of duties pursuant to the act shall be punished by a fine of not more than $5,000 or imprisonment for not more than one year, or both.

Whether this act exceeds the regulatory power of Congress under the Constitution with respect to interstate commerce and by its terms includes subject-matter purely intrastate in character which is no concern of Congress, we regard as a grave and difficult question.

The Circuit Court of Appeals for the Second Circuit, in the case of National Labor Relations Board v. Associated Press, 85 F.(2d) 56, opinion filed July 13, 1936, has apparently construed the act as applying only to those employers and employees who are actually engaged in interstate commerce, and to those unfair labor practices defined in the act which directly affect such commerce. In the case referred to, it was held that the Associated Press and the employee there involved, who had been discharged for joining a union, were actually engaged in interstate commerce, and the court granted the application of the board to enforce a cease and desist order. In the case of National Labor Relations Board v. Friedman-Harry Marks Clothing Co., Inc., 85 F.(2d) 1, opinion filed July 13, 1936, the same court denied the application to enforce a cease and desist order of the board against a manufacturer of men's clothing at Richmond, Va., on the ground that the relations of employer and employee were incidents of production and that the employer was not engaged in interstate commerce and that its labor practices did not directly affect interstate commerce.

Whether the act, in view of its language, may be limited by construction so as to apply only to labor relations in or directly affecting interstate commerce, we think is at least uncertain.

Another grave question presented by this suit is whether the curtailment of the right of an employer, who is subject to the act, to bargain individually with his employees or such of his employees as are willing to so bargain with him, as well as the curtailment of the right of employees to bargain individually with their employer, does not render the act null and void be-

cause of its apparent conflict with the due process clause of the Fifth Amendment of the Constitution of the United States. That this clause protects freedom of contract has long been settled. The last expression of the Supreme Court on that subject is contained in the case of Morehead v. People of New York ex rel. Tipaldo, 56 S. Ct. 918, 923, 80 L.Ed. 1347, opinion filed June 1, 1936. The court in that case held invalid a statute of New York providing minimum wages 'for women. The court said: "This court's opinion shows [Adkins v. Children's Hospital] 261 U.S. 525, at pages 545, 546, 43 S.Ct. 394, 67 L.Ed. 785, 24 A.L.R. 1238: The right to make contracts about one's affairs is a part of the liberty protected by the due process clause. Within this liberty are provisions of contracts between employer and employee fixing the wages to be paid. In making contracts of employment, generally speaking, the parties have equal right to obtain from each other the best terms they can by private bargaining. Legislative abridgment of that freedom can only be justified by the existence of exceptional circumstances. Freedom of contract is the general rule and restraint the exception. This court has found not repugnant to the due process clause statutes fixing rates and charges to be exacted by businesses impressed with a public interest, relating to contracts for the performance of public work, prescribing the character, methods, and time of payment of wages, fixing hours of labor."

In Wolff Packing Co. v. Court of Industrial Relations, 262 U.S. 522, 525, 534, 43 S. Ct. 630, 632, 67 L.Ed. 1103, 27 A.L.R. 1280, the Supreme Court said of the act there challenged: "It curtails the right of the employer on the one hand, and of the employee on the other, to contract about his affairs. This is part of the liberty of the individual protected by the guaranty of the due process clause of the Fourteenth Amendment."

In Adair v. United States, 208 U.S. 161, 174, 175, 28 S.Ct. 277, 280, 52 L.Ed. 436, 13 Ann.Cas. 764, Mr. Justice Harlan, speaking for the court, said: "The right of a person to sell his labor upon such terms as he deems proper is, in its essence, the same as the right of the purchaser of labor to prescribe the conditions upon which he will accept such labor from the person offering to sell it. * * * In all such particulars the employer and the employee have equality of right, and any legislation that disturbs that equality is an arbitrary interference with the liberty of contract which no government can legally justify in a free land."

In Coppage v. State of Kansas, 236 U. S. 1, 14, 35 S.Ct. 240, 243, 59 L.Ed. 441, L. R.A.1915C, 960, Mr. Justice Pitney said: "Included in the right of personal liberty and the right of private property—partaking of the nature of each—is the right to make contracts for the acquisition of property. Chief among such contracts is that of personal employment, by which labor and other services are exchanged for money or other forms of property. If this right be struck down or arbitrarily interfered with, there is a substantial impairment of liberty in the long-established constitutional sense. The right is as essential to the laborer as to the capitalist, to the poor as to the rich; for the vast majority of persons have no other honest way to begin to acquire property, save by working for money."

See, also, Butchers' Union Co. v. Crescent City Co., 111 U.S. 746, 4 S.Ct. 652, 28 L.Ed. 585; Allgeyer v. Louisiana, 165 U. S. 578, 591, 17 S.Ct. 427, 41 L.Ed. 832; Lochner v. New York, 198 U.S. 45, 53, 56, 25 S.Ct. 539, 49 L.Ed. 937, 3 Ann.Cas. 1133; Muller v. Oregon, 208 U.S. 412, 421, 28 S.Ct. 324, 52 L.Ed. 551, 13 Ann.Cas. 957; New York Life Ins. Co. v. Dodge, 246 U.S. 357, 373, 374, 38 S.Ct. 337, 62 L.Ed. 772, Ann.Cas.1918E, 593; Adkins v. Children's Hospital, supra, 261 U.S. 525, 545, 43 S.Ct. 394, 67 L.Ed. 785, 24 A.L.R. 1238; Meyer v. State of Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042, 29 A.L.R. 1446.

If the act challenged in this suit had provided that it should be an unfair labor practice for an employer to bargain collectively with the representative of a majority of his employees, we think no court would sustain the act, for the right of employees to organize and bargain collectively is undoubtedly protected by the due process clause of the Fifth Amendment to the Constitution of the United States. The question, then, is whether the right of an employer to bargain individually with his employees (regardless of whether a majority of them have selected representatives to bargain for all of his employees or not) and the right of his employees to bargain individually with him are not also fully protected by this same due process clause. The court below was of the opinion that

such rights to contract were protected by the Constitution of the United States, and certainly no one would contend, in the present state of the law, that that conclusion was without substantial support. If the conclusion reached by the trial court in this regard was correct, then he would seem to be justified in concluding that the act was wholly void upon the ground that the collective bargaining feature of the act constituted its "bone and sinew," without which the act could not stand. Carter v. Carter Coal Co., 56 S. Ct. 855, 80 L. Ed. 1160, opinion filed May 18, 1936.

That the injury to the appellees would be certain, substantial, and immediate if a temporary injunction were not granted is apparent from the findings which the trial court has made. That the injury to the appellants from the granting of the temporary injunction will be inconsequential is clear. The decree which the trial court has entered amounts to nothing more than granting a stay of proceedings before the board until this suit is finally determined. If the facts found by the trial court are correct, the board can make no order which can be enforced against the appellees even if the act should ultimately be held constitutional, since the findings clearly establish the intrastate character of the complainants' manufacturing operations and of their relations with their employees. Carter v. Carter Coal Co. et al., supra; Schechter Poultry Corp. v. United States, 295 U.S. 495, 496, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947; National Labor Relations Board v. Friedman-Harry Marks Clothing Co., Inc. (C.C.A.2) 85 F.(2d) 1, supra.

It is contended that there is an adequate remedy at law provided by the act itself. The trial court thought that the remedial provisions of a wholly unconstitutional act would be no more adequate than the act itself. The claim of the appellants is that the appellees must subject themselves to the inquisitorial powers of the board until such time as the board shall see fit to apply for a court order to enforce a subpœna or to enforce a cease and desist order, if one shall be made, before asserting their rights.

There are cases holding that the remedy provided by the act is adequate, complete, and exclusive. E. I. DuPont DeNemours & Co. v. Boland (C.C.A.2) 85 F.(2d) 12, opinion filed July 13, 1936; Associated Press v. Herrick (D.C.S.D.N.Y.) 13 F. Supp. 897, 900; S. Buchsbaum & Co. v. Beman (D.C.N.D.Ill.) 14 F.Supp. 444, 449. These cases, we think, do not establish the adequacy of the remedy as applied to every case arising under the act.

It is asserted that under the decision of this court in Chamber of Commerce v. Federal Trade Commission, 280 F. 45, the remedy provided by such an act is adequate and exclusive. That was a suit for certiorari filed originally in this court. Judge Van Valkenburgh, who delivered the opinion of the court, said (280 F. 45, at page 46): "In our judgment certiorari, as such, will not lie, because this court has no power to issue the writ as original process, and because, further, we have not here presented a case where the writ is desired, as in the nature of an auxiliary process in aid of jurisdiction acquired; nor is it necessary for the protection of appellate jurisdiction before such jurisdiction is actually obtained, which otherwise might be defeated, nor to make the jurisdiction effectual, nor because of the absence of any other remedy. The writ, as asked, partakes largely of the nature of a writ of prohibition, but such is not justified by the circumstances in this case under any power conferred by statute upon Circuit Courts of Appeals." It was pointed out in that case that full provision for review of the orders of the Federal Trade Commission was provided for by the act creating that commission. There was no suggestion that the act was probably unconstitutional, and it is very obvious that the court was not dealing with any such situation as exists here, where we are reviewing an exercise of discretion by a trial court, and where our own discretion is not and cannot be invoked.

The cases cited by appellants which sustain orders denying preliminary injunctions in suits to restrain the enforcement of the act are not particularly helpful, since they deal with the exercise of judicial discretion by a trial court which has found either that no substantial injury will be done to the complainant by the proceedings of the board, or that the remedy provided by the act is, under the circumstances, adequate.

If the act is invalid, as the trial court has held, then the appellants in carrying on their investigations into the affairs of the appellees are virtually trespassers, and the complainants are entitled to such protection as would be accorded to them

against similar proceedings conducted by persons who were acting without any authority of law. The fact that a cease and desist order of the board, if one were made, could only be enforced by this court, and the fact that the board could not compel the attendance of witnesses without an order of court, does not, in our opinion, preclude the granting of a temporary injunction in a case such as this, where the trial court has found that what the board threatens to do prior to the issuance of any cease and desist order will seriously injure the appellees' business.

In Watson v. Sutherland, 5 Wall. 74, 79, 18 L.Ed. 580, the Supreme Court said with reference to the claimed adequacy of a remedy at law in that case:

"Loss of trade, destruction of credit, and failure of business prospects, are collateral or consequential damages, which it is claimed would result from the trespass, but for which compensation cannot be awarded in a trial at law.

"Commercial ruin to Sutherland might, therefore, be the effect of closing his store and selling his goods, and yet the common law fail to reach the mischief. To prevent a consequence like this, a court of equity steps in, arrests the proceedings in limine; brings the parties before it; hears their allegations and proofs, and decrees, either that the proceedings shall be unrestrained, or else perpetually enjoined. The absence of a plain and adequate remedy at law affords the only test of equity jurisdiction, and the application of this principle to a particular case, must depend altogether upon the character of the case, as disclosed in the pleadings."

The claim of the appellants that the court was without jurisdiction to grant the temporary injunction because the complaint did not originally show that the amount in controversy exceeded $3,000, we regard as without merit upon the record before us. The supplemental complaint, as finally amended, which is the only complaint contained in the record, contains a sufficient averment in that regard (see Packard v. Banton, 264 U.S. 140, 142, 44 S.Ct. 257, 68 L.Ed. 596), and the trial court has found that the jurisdictional amount is involved. The appellants assert that the trial court improperly permitted the complaint to be amended with respect to the amount in controversy. In view of the finding of jurisdiction, it would not seem to be important how or under what circumstances the amendment was allowed to conform the pleading to the proof. A. C. Motor Freight Lines, Inc., v. Shingledecker (C.C.A.7) 70 F.(2d) 827, 828; Oriole Phonograph Co. et al. v. Kansas City Fabric Products Co. et al. (C.C.A.8) 34 F.(2d) 400; McAllister et al. v. Sloan (C.C.A.8) 81 F.(2d) 707.

We have refrained from expressing an opinion as to the constitutionality of the act, because of the rule that upon an appeal from an order granting a temporary injunction, the appellate court will ordinarily not go into the merits of the case further than is necessary to determine whether the trial court exceeded a reasonable discretion, and because some of the questions presented can better be determined after the case has been tried.

The order appealed from is affirmed.